JEFFREY PROVUS, Plaintiff-Appellant, *v.* THE BOARD OF EDUCATION OF THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

(No. 58134;

First District (1st Division)—May 29, 1973.

Ligtenberg, DeJong & Poltrock, of Chicago, (John Ligtenberg, of counsel,) for appellant.

John T. Mehigan, of Chicago, (Michael J. Murray, Richard E. Girard, and John L. Wren, of counsel,) for appellees.

Mr. JUSTICE HALLETT delivered the opinion of the court:

The plaintiff's complaint sought a court order against the Board of Education and its General Superintendent reinstating the plaintiff as a teacher in the Chicago public schools. After the defendants had answered, the plaintiff moved for a temporary injunction. Following an argument, during which it was conceded that no real issues of fact were involved, the trial court denied the motion for a temporary injunction and entered judgment for the defendants on the pleadings. This appeal is from that denial and judgment.

The plaintiff was awarded a temporary teacher's certificate and employed as a full time substitute teacher on a temporary teaching certificate. He continued his teaching and on March 17, 1969, received his formal appointment as a teacher from the eligible list.

On November 29, 1971, he was given written notice of unsatisfactory performance and subsequently received directions and instructions from his principal for the improvement of his teaching. On February 15, 1972, he was given a second written notice of unsatisfactory teaching performance. Thereafter, on March 3, 1972, a conference was held with him before the Bureau of Teacher Personnel to review the unsatisfactory evaluation of his teaching service by his principal. As a result of this conference, a recommendation was made to the defendant General Superintendent of Schools that the services of Provus as a probationary teacher be terminated.

On March 13, 1972, Provus was advised by letter from the General Superintendent that his services as a teacher were to be terminated effective March 15, 1972, because of his failure to maintain order and discipline in his classroom, his neglect of his pupils in failing to give them necessary individual attention and to correct their mistakes, his failure to prepare assignments, and finally his failure adequately to teach the pupils in his fourth grade class. The Board of Education at its regular meeting of April 12, 1972, approved a resolution dismissing Provus.

On May 9, 1972, Provus filed the present suit against the General Superintendent of Schools and the Chicago Board of Education for declaratory relief, injunctive relief, and damages.

The statutory provisions involved are Ill. Rev. Stat. 1967, ch. 122, pars. 34—83, 34—84, which provide as follows:

> "SECTION 34—83. *Board of examiners—Certificates—Examinations.* A board of 3 examiners shall examine all applicants required to hold certificates to teach and the board of education shall issue gratuitously to those who pass a required test of character, scholarship and general fitness, such certificates to teach as they are found entitled to receive. The board of examiners shall consist of the general superintendent of schools and 2 persons approved and appointed by the board of education upon the nomination of the general superintendent of schools. The board of examiners shall hold such examinations as the board of education may prescribe, upon the recommendation of the general superintendent of schools and shall prepare all necessary eligible lists, which shall be kept in the office of the general superintendent of schools and be open to public inspection. Members of the board of examiners shall hold office for a term of 2 years.

> SECTION 34—84. *Appointments and promotions.* Appointments and promotions of teachers, principals and other educational employees shall be made for merit only, and after satisfactory service for a probationary period of 3 years (during which period the board may dismiss or discharge any such probationary employee upon the recommendation, accompanied by the written reasons therefor, of the general superintendent of schools) appointments of teachers and principals shall become permanent subject to: (1) termination by compulsory retirement at the age of 65 years; (2) the rules of the board concerning conduct and efficiency; and (3) removal for cause in the manner provided by Section 34—85 * * *."

The first question before us is—When did the plaintiff's "probationary period of 3 years" begin? The plaintiff contends that, because he was

already teaching at the time, it began on October 4, 1968, the date of his temporary certificate. The defendants contend that it did not begin until March 17, 1969, when, after having received said certificate, he was formally appointed as a teacher.

■■ The defendant's position was sustained in *People ex rel. Thomas v. Board of Education of the City of Chicago* (1963), 40 Ill.App.2d 308, 188 N.E.2d 237. There the trial court, in concluding that the relator had served her 3 years, added, to the time the teacher taught after being formally appointed from the eligible list, time she had served as an uncertified teacher. In reversing and remanding with directions to enter judgment against the relator, this court, as pages 313 and 316, said:

> "Illinois courts have specifically held that persons occupying positions in the public service and in municipal employment as mere temporary employees cannot, by performing such services as temporary employees, gradually acquire civil service or tenure rights; to permit such a practice would nullify the purposes of tenure laws.
>
> \* \* \*
>
> *The term probationary period,* although not specifically defined by statute, *connotes an appointment from an eligible list following an examination;* and a probationary period, being a testing period, begins with the date of the appointment which will ripen into a permanent position following the statutory probationary period. In the instant case the statutory probationary period of three years had not been completed, and therefore relator's contention that she was entitled to a hearing is without merit. If the ruling of the trial judge in this case were to be approved, the board could retain the services of temporary teachers to the exclusion of regularly qualified teachers, a practice which would be contrary to the entire spirit of the Tenure Statute, and the board would thereby be given the power to circumvent and nullify the Tenure Act. Such an interpretation would permit the board to do indirectly what the statute forbids it to do directly. Hankenson v. Board of Education, 15 Ill.App.2d 440, 446, 146 N.E.2d 194 (1957). \* \* \*." (Emphasis ours.)

The second question presented is—Whether the "dismissal or discharge" of a "probationary" teacher mentioned in Sec. 34—82 must be accomplished within the three years, as the plaintiff contends, or whether such action may be taken within a reasonable time after the teacher has completed his three year probationary period, as the defendants contend.

The defendants cite and rely heavily upon *State v. East Baton Rouge*

*Parish School Board*, 213 La. 885, 35 So. 2d 804, where the Supreme Court of Louisiana, in passing on the effect of a Louisiana teachers' tenure statute substantially like ours, upheld the defendants' contention and held, at page 897, that the dismissal or discharge could be accomplished,

"within a reasonable time after the expiration of the probationary period."

For reasons hereinafter outlined, we doubt the soundness of that decision and are disinclined to follow it.

Had our statute, after providing for "a probationary period of 3 years", set no limit on when a probationary teacher could be dismissed or discharged, the law would have implied, as did the Louisiana court,

"a reasonable time after the expiration of the probationary period."

But the statute does not stop there and specifically says:

"during which period [*i.e.*: the three years] the board may dismiss or discharge any such probationary employee upon the recommendation, accompanied by the written reasons therefor, of the general superintendent of schools." (bracketed words ours.)

■■■ We are not free to ignore the plain language of the statute to the effect that the dismissal or discharge must be accomplished during the probationary three year period. (*Levinson v. Home Bank and Trust Co.*, 337 Ill. 241, 243, 169 N.E. 193; *In re Petition of Village of Hickory Park*, 10 Ill.App.2d 146, 149; *Mason v. Cutkomp*, 15 Ill.App.2d 378, 382.) We therefore hold that, under our statute, the dismissal or discharge of a probationary teacher must be accomplished during the three year probationary period.

This rather obvious result finds support in the following decisions in other states under somewhat analogous teachers' tenure laws:

*State ex rel. Rutherford v. Barberton Board of Education*, 148 Ohio St. 242, 74 N.E.2d 246 (1947);

*Whittington v. Barfour County Board of Education*, 250 Ala. 692, 36 So.2d 83 (1948);

*Iredell County Board of Education v. Dickson*, 235 N.C. 359, 70 S.E.2d 14 (1952);

*Flowing Wells School District v. Stewart*, 18 Ariz. App. 19, 499 P.2d 750 (1972);

*Weckerly v. Mona Shores Board of Education*, 388 Mich. 731, 202 N.W.2d 777 (1972).

This brings us to the third and last question—Does the General Superintendent of Schools have the power himself to discharge or dismiss a

probationary teacher or must this be done by formal action of the defendant Board of Education?

■■ Again we must follow the plain wording of the statute itself (Ill. Rev. Stat. (1967), ch. 122, par. 34—84), which provides that, during the probationary three year period above discussed,

> "*the board may dismiss or discharge any such probationary employee* upon the recommendation, accompanied by the written reasons therefor, of the general superintendent of schools." (emphasis ours.)

We therefore must and do hold that only the defendant Board of Education, by formal action, can discharge or dismiss a probationary teacher and that the defendant General Superintendent of Schools cannot himself do so.

Again, this rather obvious conclusion is supported by decisions in other states under somewhat similar teachers' tenure statutes. See:

> *State ex rel. Rutherford v. Barberton Board of Education,* 148 Ohio St. 242, 74 N.E.2d 246 (1947);
>
> *Iredell County Board of Education v. Dickson,* 235 N.C. 359, 70 S.E.2d 14 (1952);
>
> *Weckerly v. Mona Shores Board of Education,* 388 Mich. 731, 202 N.W.2d 777 (1972).

Since it stands undisputed on the record in the case at bar that the defendant Board of Education took no action to discharge or dismiss the plaintiff until April 12, 1972, some 26 days after the three years, it follows that the plaintiff became and was a "tenured" teacher and entitled, under the statute (ch. 122, sec. 34—85), *inter alia,* to at least 20 days written notice of the charges against him, an adversary hearing before the full Board or a duly authorized committee thereof, to be represented by an attorney, and to be removed "only by a vote of a majority of all members of the board." On the record, none of these steps was taken in this case.

As a result, the attempt here to terminate the plaintiff's employment was legally ineffectual and he is entitled to reinstatement as a "tenured" teacher in the Chicago public schools.

We therefore reverse the order and judgment below and remand the cause for further proceedings consistent with views herein expressed.

Order and judgment reversed and cause remanded with directions.

BURKE, P. J., and GOLDBERG, J., concur.