THOMAS DALEANES, Plaintiff-Appellant, *v.* BOARD OF EDUCATION OF BENJAMIN ELEMENTARY SCHOOL DISTRICT 25, DU PAGE COUNTY, *et al.*, Defendants-Appellees.

Second District   No. 82—1019

Opinion filed December 27, 1983.

Gerald J. Brooks, of Fawell, James & Brooks, of Naperville, for appellant.

David P. Kula, of Scariano, Kula & Associates, of Chicago Heights, for appellees.

JUSTICE LINDBERG delivered the opinion of the court:

Plaintiff, Thomas Daleanes, a school superintendent for defendant Board of Education of Benjamin Elementary School District 25 (hereinafter the board), appeals the summary judgment of the circuit court of Du Page County against his action in which he claimed that he was improperly dismissed from his employment by the board. Because we view the board's conduct to constitute a valid nonrenewal of Daleanes' contract, we affirm.

In February 1981, Daleanes was employed under contract as the superintendent of schools by the board. At its regularly scheduled meeting on February 16, 1981, the board unanimously passed a resolution that contained the following declarations:

"Section 1: That this Board of Education hereby determines that Thomas Daleanes shall not be reemployed as superintendent of this School District for the next ensuing school term, and accordingly that the present contract of employment of Thomas Daleanes shall terminate at the close of the present school term.

Section 2: That the President and Secretary of the Board of Education are hereby authorized and directed to give Thomas Daleanes notice of this Board's decision not to re-employ said superintendent for the next ensuing school term which shall be substantially in the form of Exhibit 1 attached hereto and made a part hereof.

Section 3: That the President and Secretary of this Board of

Education are hereby authorized and directed to give Thomas Daleanes a specific Bill of Particulars in connection with the non-renewal of his contract and Mr. Daleanes may request a closed-session hearing within 10 days after receipt of such notice.

Section 4: This resolution shall be in full force and effect from and after its adoption."

The Board, by its president and secretary, subsequently served Daleanes with a letter dated February 16, 1981, stating the following:

"You are hereby notified that the Board of Education of Benjamin School District No. 25, DuPage County, Illinois, have decided it will not re-employ you as superintendent of this School District for the ensuing school term, and your contract of employment will therefore terminate at the close of the present school term.

The specific reasons for the non-renewal of your contract are set out in the attached Exhibit A. Within 10 days you may request a closed-session hearing on this dismissal at which time you have the privilege of presenting evidence, witnesses and defenses on the grounds for dismissal."

Simultaneously with the letter, Daleanes received a four-page document entitled "Bill of Particulars," also dated February 16, 1981, and setting forth 30 reasons for Daleanes' dismissal. At its next regular meeting on March 16, 1981, the board approved its official minutes of the February 16 meeting. Those minutes contained the quoted resolution and letter, but did not include the bill of particulars.

Daleanes formally requested a closed-session hearing on the subject of his nonrenewal on February 24, 1981. The board subsequently announced that it would hold a special closed meeting on March 6, 1981, with "Consideration of Employment of a Superintendent" as the sole agendum. The closed-session hearing on Daleanes' nonrenewal was held on April 7 and 15 and May 1, 1981. On May 11, 1981, the board by resolution affirmed its determination not to renew Daleanes' contract. Although it did strike 13 of the causes enumerated in the bill of particulars, the board's affirmation was based upon the proof of the remaining 17 enumerated causes.

This action was initiated by Daleanes on May 8, 1981, with a complaint which sought declaratory and injunctive relief and which was amended to seek contract damages, all in redress for the board's allegedly invalid decision not to renew his contract. The procedural history of this action in the trial court has been long and complex and need not be detailed here. Daleanes notes, however, that the dispute

over his employment has also given rise to a separate action in the United States District Court for the Northern District of Illinois (No. 82 C 214) and an interlocutory appeal from the present action (No. 81—757), which this court dismissed for lack of jurisdiction. Neither the Federal court action nor the previous appeal to this court is relevant to the issues raised in this appeal. On November 22, 1982, the trial court granted summary judgment in the board's favor, from which Daleanes brings this timely appeal.

We first address a contention by Daleanes that the trial court erred in permitting the board to file a response to his notice to admit facts after the deadline for such response provided in Supreme Court Rule 216 (73 Ill. 2d R. 216). Although the notice had been filed on January 29, 1982, the board did not seek leave to respond until after Daleanes' April 13, 1982, motion for judgment on the pleadings, which relied upon the requested admissions. The trial court first denied the board leave to respond, but, upon the board's motion to reconsider, leave was granted. Rule 216(c) provides that requested admissions are admitted unless response is given within 28 days. 73 Ill. 2d R. 216(c).

Although some courts have declined to relieve a tardy litigant from being bound by his failure to respond within the 28-day period (see *City of Champaign v. Roseman* (1958), 15 Ill. 2d 363; *Banks v. United Insurance Co. of America* (1975), 28 Ill. App. 3d 60, 328 N.E.2d 167; *Crum v. Golf Oil Corp.* (1973), 12 Ill. App. 3d 988, 299 N.E.2d 820), a court may in its discretion permit a tardy response to a request to admit. (*Bluestein v. Upjohn Co.* (1981), 102 Ill. App. 3d 672, 430 N.E.2d 580; *Redmond v. Central Community Hospital* (1978), 65 Ill. App. 3d 669, 382 N.E.2d 95.) The *Redmond* court suggested that permitting the filing of a late response is permissible where the failure to respond in time is the result of circumstances beyond the control of the litigant. (65 Ill. App. 3d 669, 678, 382 N.E.2d 95, 102.) More generally, the Supreme Court Rules empower a trial court to extend any time limit created by the rules "for good cause shown." 73 Ill. 2d R. 183.

The board's excuse in this case was that it was in the process of changing attorneys. Daleanes sent his request to admit to the board's then-attorneys, Leonard Seraphin and E. Allan Kovar, on January 29, 1982. According to the board's present attorneys, Scariano, Kula & Associates, they examined the court file during the first week of February 1982, immediately after they were asked by the board to handle this case, and found no request to admit because of an alleged gap in the time between the official filing of the document and its appear-

ance in the court files. Because of a fee dispute between the board and its former attorneys, Scariano, Kula & Associates did not receive the client file from the former attorneys before becoming aware of the request to admit for the first time through Daleanes' motion for judgment on the pleadings. In a supporting affidavit, attorney David Kula stated that his firm had no knowledge of the request to admit until April 16, 1982, and that he had on several occasions requested the files on the case from the board's former counsel without success.

In *Bluestein v. Upjohn Co.* (1981), 102 Ill. App. 3d 672, 430 N.E.2d 580, the trial court's allowance of a late response was affirmed where the facts in the requested admissions involved the central issue of proximate cause and the court stated that it did not choose to deny a party a jury trial due to his lawyer's carelessness. Here, the most significant requested admission, that the board did not vote on the bill of particulars later presented to Daleanes, involves a fact question central to the dispute. While the board or its new attorneys might possibly have taken some different action to avoid their ignorance of pending judicial matters, confusion resulting from the changing of attorneys is an understandable phenomenon. Moreover, Daleanes fails to demonstrate significant prejudice resulting from the delay. Under these circumstances, the trial court could properly have found "good cause" to permit a late response to the request to admit.

Daleanes principally challenges the procedure by which the board dismissed him. He first contends that the board failed to comply with the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 1—1 *et seq.*) in its determination not to renew his contract by delegating its nondelegable duty to consider the specific reasons for the nonrenewal. Daleanes argues that the School Code requires the board as a whole to consider those reasons and that an examination of the official board records shows an improper delegation of that duty. Daleanes further maintains that, because the board's official record is the only proper evidence on the question of delegation, the board erred in considering extrinsic evidence.

The relevant sections of the School Code provide in pertinent part as follows:

"Sec. 10—21. Additional duties of board. Boards of education in addition to the duties enumerated above shall have the additional duties enumerated in sections 10—21.1 through 10—21.6."

"Sec. 10—21.4. Superintendent — Duties. ***[T]o employ a superintendent who shall have charge of the administration of the schools under the direction of the board of education. ***

* * *

Notice of intent not to renew a contract must be given in writing stating the specific reason therefor by April 1 of the contract year unless the contract specifically provides otherwise. Failure to do so will automatically extend the contract for an additional year. Within 10 days after receipt of notice of intent not to renew a contract, the superintendent may request a closed session hearing on the dismissal. At the hearing the superintendent has the privilege of presenting evidence, witnesses and defenses on the grounds for dismissal." Ill. Rev. Stat. 1979, ch. 122, pars. 10—21, 10—21.4.

Both parties put forth rules of statutory construction favorable to their respective positions. Daleanes notes that statutes which confer powers on a school board must be strictly construed and should be construed not only as a grant of power but also as a limitation thereof. (*Wesclin Education Association v. Board of Education* (1975), 30 Ill. App. 3d 67, 331 N.E.2d 335.) The board points out the rule that, since the statutes governing teacher tenure create liabilities where none would otherwise exist, they must be strictly construed in order not to unduly interfere with the responsibility of local boards to efficiently operate educational systems. (*Johnson v. Board of Education* (1981), 85 Ill. 2d 338.) Both rules are applicable to section 10—21.4 because it both confers upon the school boards the power to hire and fire superintendents and creates new liabilities for the boards if they do not follow proper procedures in determining not to renew a superintendent's contract. However, it is the latter which is more directly applicable here because the privilege not to extend an employment contract would be present even without that statute while the liability for an extended contract is a new one.

With this in mind, we turn to the question of what functions a school board may delegate. The rule is that discretionary functions of school boards cannot be delegated but duties which are ministerial may be delegated. (*Sitton v. Gibbs* (1979), 73 Ill. App. 3d 812, 392 N.E.2d 244; see *Board of Education v. Chicago Teachers Union, Local 1* (1981), 88 Ill. 2d 63; *Illinois Education Association Local Community High School District 218 v. Board of Education* (1975), 62 Ill. 2d 127.) The hiring and firing of teachers pursuant to different sections of the School Code are discretionary and, therefore, nondelegable powers. (*Illinois Education Association Local Community High School District 218; Board of Education v. Cahokia District Council No. 58* (1981), 93 Ill. App. 3d 376, 417 N.E.2d 151.) The same must be said for the determination not to renew a superintendent's contract

under section 10—21.4.

At issue here is the statutory function of giving a written "notice of intent not to renew *** stating the specific reason therefor." (Ill. Rev. Stat. 1979, ch. 122, par. 10—21.4.) Appellate court cases have held that delivery to a teacher of a legally required notice relating to dismissal is a ministerial function and may be delegated. (*Sitton v. Gibbs* (1979), 73 Ill. App. 3d 812, 392 N.E.2d 244; *Allen v. Thornblad* (1976), 42 Ill. App. 3d 554, 356 N.E.2d 361; *Morelli v. Board of Education* (1976), 42 Ill. App. 3d 722, 356 N.E.2d 438.) In *Sitton*, it was held that a superintendent was acting within his statutory authority in notifying the lay supervisors of their dismissal by the school district before the district could properly delegate that task to him. In *Allen*, a notice signed and sent by the secretary of the school board was sufficient to satisfy the notice requirement of section 24—11 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—11). The section 24—11 notice requirement is stated in language very similar to that of section 10—21.4. Finally, in *Morelli*, preparation and submission to the plaintiffs of a bill of particulars by the school board's attorney satisfied the requirement in section 24—12 of the School Code (Ill. Rev. Stat. 1973, ch. 122, par. 24—12) that such a document be delivered to a teacher upon request. While noting that the subject bill of particulars only set out facts upon which the school board's decision to dismiss was actually based, the appellate court found no statutory requirement that the school board pass upon the precise content of the bill or formerly take part in its drafting. 42 Ill. App. 3d 722, 727, 356 N.E.2d 438, 442.

The court in *Paprocki v. Board of Education* (1975), 31 Ill. App. 3d 112, 115, 334 N.E.2d 841, 844, upon which Daleanes relies, stated that "*** the duty to send notice of remediable cause [pursuant to section 24—12 of the School Code] lies solely with the Board, and is a nondelegable responsibility." The court held, therefore, that such a notice sent to the plaintiff-teacher by the school principal could not satisfy the statutory notice of requirement. A close reading of the *Paprocki* case, however, reveals that the appellate court found fault with the school board in not timely determining that remediable cause existed and sending the plaintiff notice of that determination. There is no indication in the opinion that the principal's letter was sent at the school board's behest. We read *Paprocki* to prohibit the delegation of the duties to determine the existence of cause to discharge and to determine that a notice is to be sent, without prohibiting the delegation of the drafting and delivery function. Thus, *Paprocki* is consistent with the other cases discussed. Moreover, our reading is not contrary

to Daleanes' position; rather, he urges that the nondelegable duty improperly delegated here was the board's responsibility to determine the cause for dismissing him.

There is another appellate court case which more clearly distinguishes the discretionary giving of notice from the ministerial giving of notice. In *Bessler v. Board of Education* (1973), 11 Ill. App. 3d 210, 296 N.E.2d 89, the plaintiff-teacher was notified that she would not be re-employed by the personnel director of the school district before the deadline for such notification, but the school board did not take official action to discharge her until after that deadline. The court stated that it did "not quarrel with the proposition that some member of the administrative staff may communicate the Board's action to a teacher under the terms of the statute [Ill. Rev. Stat. 1971, ch. 122, par. 24—11]." (11 Ill. App. 3d 210, 213, 296 N.E.2d 89, 91.) However, because the school board's action did not take place until after the notice was sent and after the statutory deadline, it could not be reasonably inferred that the personnel director was merely conveying the action of the school board. Rather, the personnel director had himself, in effect, determined the dismissal and notified the plaintiff thereof and that action was held to be without legal effect. (11 Ill. App. 3d 210, 213, 296 N.E.2d 89, 91.) In two similar cases notice sent by a principal or superintendent prior to any action by the school board could not serve as notice from the school board as required by statute. *Litin v. Board of Education* (1979), 72 Ill. App. 3d 889, 391 N.E.2d 62; *Provus v. Board of Education* (1973), 11 Ill. App. 3d 1058, 298 N.E.2d 405.

■ After reviewing these cases, we conclude that a school board may not delegate the responsibilities to determine the existence of cause to discharge a superintendent and to determine that notice of the board's intent not to renew the superintendent's contract should be given. However, the functions of drafting the written notice and the reasons for nonrenewal and of delivering that notice are ministerial and, therefore, delegable.

Besides the question of which school board functions are nondelegable, the delegation issue raises the question of what evidence may be considered in determining the nature of the delegation. Daleanes argues that only the official records of the board are competent evidence on this issue, while the board maintains that extrinsic evidence is proper. At issue are the affidavits of two board members which were submitted by the board in support of their successful motion for summary judgment.

Affiant Patrick Baldwin averred that the entire membership of

the board, meeting in executive session on February 9, 1981, "did deliberate on, discuss, and compile the reasons for non-renewal which would comprise the bill of particulars," directed its attorney to have those reasons "typed into a bill of particulars format," and, at another executive session on February 16, 1981, "again agreed on the bill of particulars." Walter Meyers' affidavit contains the same allegations almost verbatim. If admissible, these uncontroverted affidavits would establish without question that the board did not delegate any of its nondelegable functions.

However, the admissibility of evidence of board conduct extrinsic to the official board record is uncertain. Daleanes relies upon the cases that have held that where public officials are required to keep a record of their proceedings (see Ill. Rev. Stat. 1979, ch. 122, par. 10—7), that record constitutes the only lawful evidence of action taken, and cannot be contradicted, added to or supplemented by parol. (See, e.g., *People ex rel. Prindable v. New York Central R.R. Co.* (1948), 400 Ill. 507; *People ex rel. Toman v. Chicago Heights Terminal Transfer R.R. Co.* (1941), 375 Ill. 590; *Schroeder v. Community Unit School District No. 2* (1966), 75 Ill. App. 2d 352, 220 N.E.2d 505; *Lingle v. Slifer* (1956), 8 Ill. App. 2d 489, 131 N.E.2d 822; *People ex rel. Anderson v. Community Unit School District No. 201* (1955), 7 Ill. App. 2d 32, 129 N.E.2d 28; all involving school boards.) The board on the other hand, relies upon *Hankenson v. Board of Education* (1957), 10 Ill. 2d 560, 564-65, for its statement that the official minutes of school boards "are not conclusive and must be considered with other portions of the record in order to determine the true facts and happenings." Accord, *Compton v. School Directors* (1955), 8 Ill. App. 2d 243, 131 N.E.2d 544.

We need not determine whether these cases are reconcilable, however, because we are convinced that examination of the official board record alone, even without the affidavits, fails to show improper delegation. Paragraph 3 of the board's February 16 resolution authorizes the president and secretary of the board to "give Thomas Daleanes a specific Bill of Particulars ***." We agree with Daleanes' argument that the use of the indefinite article "a" and the fact that the bill of particulars, unlike the letter of intent, was not attached to the resolution in the official board record, signifies that the bill of particulars was not yet in existence at the time of the board's formal action and that paragraph 3 was meant to authorize not only the delivery of that document but also its physical drafting. However, neither of these functions is equivalent to the function of determining the grounds of dismissal to be stated in the bill of particulars. As we have already

concluded, only the latter is nondelegable.

In *Paprocki v. Board of Education* (1975), 31 Ill. App. 3d 112, 334 N.E.2d 841, *Bessler v. Board of Education* (1973), 11 Ill. App. 3d 210, 296 N.E.2d 89, *Litin v. Board of Education* (1979), 72 Ill. App. 3d 889, 391 N.E.2d 62, and *Provus v. Board of Education* (1973), 11 Ill. App. 3d 1058, 298 N.E.2d 405, four cases relied upon by Daleanes and discussed earlier, a requirement of notice to be given by a school board could not have been satisfied by notice from a principal, personnel director, or superintendent given *before* school board action. The fact that the school officer's action predated the school board's action compelled the conclusion that the officer's action did not merely reflect that of the school board.

■ Here, the bill of particulars was provided *after* the board's formal action. Neither the minutes nor the board's resolution recite whether the board considered the grounds for dismissal. However, the letter of notice sent to Daleanes, a copy of which is part of the official record of the board, states, "The specific reasons for the non-renewal of your contract are set out in the attached Exhibit A." Exhibit A is the bill of particulars. Since it was the board which decided to dismiss Daleanes and not renew his contract, it is a reasonable inference that the reasons for the nonrenewal were those of the board. The persons authorized to prepare the bill of particulars were board members and were inferentially privy to any reasons considered by the board before voting to dismiss. There appears no language anywhere which would imply that the grounds for dismissal stated in the bill of particulars were not considered by the board, but were wholly conceived of by the preparers of that document. We hold that the board's record fails to support Daleanes' allegation of improper delegation by the board of a discretionary function.

Daleanes also contends with regard to the dismissal procedure that the notice relating to the nonrenewal of his contract was statutorily faulty. He points to the language of the letter of notice that the board "has decided" not to re-employ him and to the language of the February 16 resolution both that the board "hereby determines" that he will not be re-employed and that authorization is given for sending him notice of the board's "decision not to re-employ." Daleanes argues that this language does not constitute "notice of intent" as required by section 10—21.4 of the School Code (Ill. Rev. Stat. 1979, ch. 122, par. 10—21.4), but rather indicates that the board has already taken what it considers to be a final action.

■ School boards are not required to maintain the highest degree of accuracy or formality in the discharge of their duties on the princi-

ple that to do so would result in injury to the public. (*Lingle v. Slifer* (1956), 8 Ill. App. 2d 489, 131 N.E.2d 822; *Goldman v. Zimmer* (1965), 64 Ill. App. 2d 277, 212 N.E.2d 132, *rev'd on other grounds sub nom. Goldman v. Moore* (1966), 35 Ill. 2d 450.) Nevertheless, they must exercise power in the manner provided by statute. (*Goldman.*) The question here is whether the board's use of the words "decided" and "determines" instead of a form of the word "intent" is merely imprecise usage or so qualitatively different as to fail to satisfy the prescription of the School Code.

We find the board's argument on this question persuasive: the statutory scheme of section 10—21.4 is such that, whatever semantic difference might exist between "intent" and "determination," no legal difference could have resulted for Daleanes. That is because following the receipt by the superintendent of the notice, no further action is required by a school board in order to cause his dismissal. Without the statute, a school board's inaction (*i.e.*, failure to renew a superintendent's contract) would result in nonrenewal. Section 10—21.4 only adds the requirements of timely notice of intent not to renew and a hearing if one is requested. The statute specifically provides that failure to send notice automatically extends the contract for an additional year. Section 10—21.4 does not specifically mandate any further action by a school board. Since the provisions of this section create a liability which would otherwise not exist, we construe it strictly, under the policy of *Johnson v. Board of Decatur School District No. 61* (1981), 85 Ill. 2d 338, so as not to imply the creation of a liability upon the school board should it fail to take an action not explicitly mandated.

*Davis v. Board of Education* (1978), 63 Ill. App. 3d 495, 380 N.E.2d 58, which Daleanes cites for the proposition that notice of intent not to renew is not the final determination necessary to dismiss a superintendent, is distinguishable. The *Davis* court held that, for the purposes of the Open Meetings Act (Ill. Rev. Stat. 1977, ch. 102, par. 42), which prohibits "final actions" at closed sessions, a school board's closed-session decision not to rehire its superintendent was not a "final action." However, the *Davis* school board by its own terms, not the statute's, indicated that its decision was "tentative."

■ Since we read section 10—21.4 not to require any further action by the board in order to terminate Daleanes' employment as superintendent, notice to him by the board of its "determination" not to rehire him causes no different legal result than a notice of "intent" not to rehire him. After giving notice, the board was required to grant Daleanes a hearing if requested. It recognized that requirement

in its resolution and did, in fact, grant a hearing. We hold that the board's notice in this case served the purposes of the notice of intent required by section 10—21.4.

Daleanes contends finally that he was denied his due process right to a fair hearing. He argues that his hearing was not fair because the board members had already predetermined its outcome as evidenced by their notice of "decision" instead of "intent."

However, Daleanes has not demonstrated a constitutional due process right to a fair hearing before the board determined not to renew the contract. The requirements of procedural due process apply only to the deprivation of an interest encompassed by the fourteenth amendment protection of liberty and property. (*Board of Regents v. Roth* (1972), 408 U.S. 564, 33 L. Ed. 2d 548, 92 S. Ct. 2701; *Perry v. Sindermann* (1972), 408 U.S. 593, 33 L. Ed. 2d 570, 92 S. Ct. 2694.) To have a protectable property interest in public employment, a person must have more than an abstract need or desire for it; he must have a legitimate claim of entitlement. (*Sullivan v. Board of Fire & Police Commissioners* (1981), 103 Ill. App. 3d 167, 430 N.E.2d 636.) Not every public employee has a property right to continued employment, but a public employee can have such a right depending upon the surrounding circumstances including rules and understandings. *Powell v. Jones* (1973), 56 Ill. 2d 70.

■ Here, Daleanes provides no argument that he has shown a protectable property interest in his continued employment. The mere fact that section 10—21.4 requires the giving of notice of nonrenewal does not create a sufficient property interest to bring the due process clause into play. (See *Shirck v. Thomas* (7th Cir. 1973), 486 F.2d 691.) Without that showing, the due process clause cannot be said to require a formal hearing before a school district employee may be discharged. See *Blackmore v. Jasper County Community Unit School District No. 1* (1974), 21 Ill. App. 3d 122, 314 N.E.2d 677.

Section 10—21.4 does, however, grant Daleanes a statutory right to a hearing. The statute provides that "[a]t the hearing the superintendent has the privilege of presenting evidence, witnesses and defenses on the grounds for dismissal." (Ill. Rev. Stat. 1979, ch. 122, par. 10—21.4.) Daleanes does not argue that a hearing was not granted or that he was prevented from presenting evidence, witnesses or defenses. Rather, he maintains that the hearing was not a fair one because its outcome was predetermined.

■ The hearing provided for under the statutory scheme of section 10—21.4 only takes place after a school board has notified a superintendent of its intent not to renew his contract. Therefore, for

the school board after the hearing to then renew the superintendent's contract, the collective intent of the board must be changed. In other words, the statute itself already provides for a hearing before a school board which has made an initial judgment on a superintendent's status. There appears no legal difference for a superintendent between a hearing before a board which has already expressed an "intent" not to rehire him and a hearing before a board which has already expressed a "determination" not to rehire him. In either case, the superintendent carries a burden of changing the minds of enough board members to alter the board's purpose. This is the only sort of hearing provided for in the statute and was in fact the sort of hearing Daleanes received. To read section 10—21.4 otherwise would be to fail to construe a statute creating new liabilities for a school board strictly, contrary to the policy of *Johnson v. Board of Education* (1981), 85 Ill. 2d 338.

Accordingly, we affirm the judgment of the circuit court of Du Page County.

Affirmed.

REINHARD and VAN DEUSEN, JJ., concur.