**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 220482-U

Order filed July 25, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| SCOTT W. PARKER, | ) | Appeal from the Circuit Court |
| | ) | of the Twelfth Judicial Circuit, |
| Plaintiff-Appellant, | ) | Will County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-22-0482 |
| | ) | Circuit No. 21-MR-1323 |
| | ) | |
| ROB JEFFREYS, DAVID J. GOMEZ, | ) | Honorable |
| KEENAN YOUNG, JOHNNY SMITH, | ) | Daniel L. Kennedy, |
| and KARA MATAKIEWICZ, RN, | ) | Judge, Presiding. |
| | ) | |
| Defendants-Appellees. | ) | |

_____

JUSTICE HOLDRIDGE delivered the judgment of the court.
Presiding Justice Brennan and Justice Davenport concurred in the judgment.

_____

**ORDER**

¶ 1     *Held*:  (1) The circuit court did not err in granting the State leave to file a motion to dismiss *instanter*. (2) The circuit court did not err in dismissing the complaint as the plaintiff failed to state a claim for *mandamus* relief.

¶ 2     The plaintiff, Scott W. Parker, filed a complaint for *mandamus* relief (735 ILCS 5/14–101 *et seq.* (West 2020)) naming multiple Illinois Department of Corrections (Department) employees and a nurse employed by Wexford Health Sources, Inc., (Wexford), Kara

Matakiewicz, as defendants for failing to follow legal procedures before imposing discipline upon him for violating prison rules. The trial court granted the State defendants' leave to file a motion to dismiss *instanter*. Matakiewicz and the State moved separately to dismiss the complaint under section 2–615 of the Code of Civil Procedure (735 ILCS 5/2–615 (West 2020)), and the court granted their motions. On appeal, the plaintiff argues that the trial court erred in (1) allowing the State defendants to move to dismiss *instanter*, and (2) dismissing his complaint.

¶ 3                                    I. BACKGROUND

¶ 4        The Plaintiff is an inmate in the custody of the Department at the Stateville Correctional Center (Stateville). On July 20, 2020, the plaintiff was served with an offender disciplinary report by defendant Johnny Smith, a Stateville correctional officer. The disciplinary report provided an account of an incident that occurred on July 17, 2020, when the plaintiff was visiting the Stateville health care unit. According to the report, during the plaintiff's visit to the health care unit, Matakiewicz was on duty and speaking with her supervisor, nurse M. Smith, when Matakiewicz's hair was pulled. After Matakiewicz inquired who pulled her hair, Smith stated it was the plaintiff. The incident was classified as a "major infraction" requiring a hearing investigator's review.

¶ 5        On July 18, 2020, Keenan Young, a Stateville adjustment committee chairperson, visited the plaintiff's cell and asked him about the reported incident. The plaintiff denied any knowledge of the incident. On August 20, 2020, the plaintiff attempted to use a telephone available to inmates, at which time he learned his phone privileges had been restricted, causing him to suspect that disciplinary action had been taken against him. The plaintiff spoke about the matter with Young, who informed him that he had been found guilty of assault and insolence.

¶ 6        The plaintiff filed a grievance over the disciplinary report on August 21, 2020. In the grievance, the plaintiff stated that he was called into the urgent care area of the prison's health care unit to discuss his hearing loss and was then taken to the medical director's office. The plaintiff stated he was there for about eight minutes and had no contact with any medical staff, other than the nurse who escorted him there and the medical director. The plaintiff claimed in the grievance that the officer's conduct in reporting the alleged incident and the imposition of discipline against him violated both the Department's regulations and his due process rights.

¶ 7        Later that day, a correctional officer presented the plaintiff with a note confirming that he had been found guilty of the charges, and that the resulting discipline included a reduction to Grade C confinement status. The plaintiff filed an emergency grievance directly with the warden of Statesville, David Gomez, claiming that he had been found guilty of the charges and had discipline imposed without an adjustment committee hearing, and asking that the guilty findings be expunged from his prison record and the disciplinary measures withdrawn.

¶ 8        The plaintiff was then assigned to a counselor, who spoke to him about the incident. The counselor confirmed that the plaintiff had been found guilty of the charges and that the following discipline was imposed: one month demotion to Grade C status (including telephone restrictions), six months of contact visit restrictions, and two months in segregation. The plaintiff questioned how he could have been found guilty of the charges without a hearing before the adjustment committee and asked for a copy of the "[d]isciplinary [s]ummary [r]eport" that should have contained the guilty findings and advised him of his right to appeal them.

¶ 9        The plaintiff received a "counseling summary" on September 3, 2020, stating that the warden had accepted his emergency grievance. The plaintiff also received counseling summaries noting receipt of the August 21, 2020, grievance on September 3, 2020, and the August 22, 2020,

3

grievance on September 1, 2020. The grievance officer's responses to each found that the disciplinary report "was reviewed and determined by the Adjustment Committee that they are reasonably satisfied of the offender's guilt." The grievance officer could not "substantiate [that] the incident occurred any other way than reported," and so upheld the discipline and recommended the denial of both grievances.

¶ 10    The plaintiff appealed each grievance denial to the grievance review board (Board), which responded that it was also "unable to substantiate [that] the incident occurred any other way than reported." The Board denied each grievance, finding that "the issue was appropriately addressed by the [Stateville] Administration," that there was no due process violation, and that the Board was "reasonably satisfied [that the plaintiff] committed" the offenses charged. The Board also determined that due to the "guilty" finding on the "staff assault" charge, the plaintiff was ineligible for a prison job assignment.

¶ 11    The plaintiff filed a petition for writ of *mandamus* in the circuit court of Will County on April 19, 2021, against Department Director Rob Jeffreys, Gomez, Young, Smith, and Matakiewicz. The plaintiff claimed that the copy of the disciplinary report he had received was incomplete and that the Department's procedures were not followed because the report lacked "[a] clear descriptive narrative of events" to substantiate the incident; did not indicate the method by which the plaintiff was identified as the offender; and did not sufficiently verify the accuracy of each charge. The plaintiff also claimed that the adjustment committee did not follow proper procedures because it conducted an improper hearing or no hearing at all and did not provide him with a summary of its findings or the grievance procedures to appeal those findings.

¶ 12    According to the plaintiff, those deficiencies violated the Department's Administration of Discipline Manual and regulations, specifically 20 Ill. Admin. Code § 504.80(o), (p), governing

disciplinary proceedings, which required a specific description of an incident, and that an offender be (1) informed of a "guilty" finding, (2) given the opportunity to appeal it through the prison grievance procedures, and (3) provided with a summary report. The plaintiff claimed that the failure to comply with section 504.80 violated his procedural due process rights under the Fifth and Fourteenth Amendments to the United States Constitution. The plaintiff additionally argued that the discipline imposed impacted a liberty interest because he could no longer hold a prison job as a result and therefore could not earn good time credit in the future.

¶ 13        The plaintiff claimed that *mandamus* relief was necessary to require the State defendants to follow the Department's internal rules in administering prison disciplinary actions. The relief he sought was, *inter alia*, an order of *mandamus* requiring the State defendants to "restore all his privileges," expunge the discipline from his record, and reinstate him in the prison job he held before the incident. The plaintiff additionally sought monetary damages against all defendants. The plaintiff amended his petition twice, adding, in relevant part, that the discipline imposed on him impacted a liberty interest by depriving him of the opportunity to earn good time credit.

¶ 14        On August 23, 2021, Matakiewicz moved to dismiss the plaintiff's second amended complaint under section 2-615 of the Code (735 ILCS 5/2-615 (2020)).

¶ 15        On September 23, 2021, Assistant Attorney General Jon Kangwa made an initial appearance for the State defendants and requested an extension to answer the plaintiff's petition. The request was granted. The State defendants did not answer the plaintiff's petition, and nothing was heard in their defense until February 4, 2022, when Assistant Attorney General David Lam filed an appearance for the State defendants. On February 16, 2022, the State defendants sought leave to file a motion to dismiss *instanter*. The State defendants explained that Assistant Attorney General Kangwa had left the office and argued that the circuit court should exercise its

discretion by granting leave to file the motion because the case was still at the pleading stage, that Matakiewicz's motion to dismiss was still pending, that allowing the filing would conserve judicial resources, and that the plaintiff would not be prejudiced because he would have a chance to respond to the motion.

¶ 16    The plaintiff argued that leave should be denied because the State defendants' explanation did not amount to "good cause" for the late filing. The circuit court, over the plaintiff's objection, entered an order granting the State defendants leave to file their motion to dismiss under section 2-615 of the Code (735 ILCS 5/2-615 (2020)).

¶ 17    On October 27, 2022, all parties appeared before the circuit court for oral argument on the motions to dismiss the plaintiff's petition. Following oral arguments, the circuit court dismissed the plaintiff's petition with prejudice.

¶ 18    The plaintiff appealed.

¶ 19                                    II. ANALYSIS

¶ 20    On appeal, the plaintiff first argues the court erred by granting the State defendants leave to file their motion to dismiss *instanter*, asserting that leave should have been denied because the filing was "five months late," and no good cause was shown for the delay. The plaintiff further argues that the court erred by dismissing the plaintiff's petition for *mandamus* relief, arguing that *mandamus* relief was the proper method of redress for violations of disciplinary procedures involving claims of procedural due process violations or where a liberty interest was at stake.

¶ 21    A circuit court may "for good cause shown on motion," extend the "time for filing any pleading *** either before or after the expiration of the time." Ill. Sup. Ct. R. 183 (eff. Feb. 16, 2011). In determining whether good cause exists, the circuit court may consider "all objective, relevant evidence" as to the failure to comply with the original deadline and why an extension of

6

time should be granted. *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 353 (2007). The circuit court has broad discretion in setting and extending deadlines for the filing of pleadings. *Village of New Athens v. Smith*, 2021 IL App (5th) 200257, ¶ 32. Thus, a circuit court's determination about what constitutes "good cause" with respect to the timing of a pleading's filing is "fact-dependent and rests within [its] sound discretion." *Schacht v. Lome*, 2016 IL App (1st) 141931, ¶ 29. Absent an abuse of discretion, a circuit court's decision on this issue "will not be disturbed" on appeal. *Id*. A circuit court abuses its discretion only if no reasonable person would adopt its view. *Id*.

¶ 22    Here, the State defendants' motion explained the departure of the assistant attorney general originally assigned to represent them and the diligence of the newly assigned counsel in seeking leave to file the responsive pleading. The case was still at the pleading stage, Matakiewicz's motion to dismiss was still pending, and allowing the filing would conserve judicial resources. Given the circumstances, we cannot conclude that the circuit court abused its discretion by granting the State defendants' motion for leave to file their motion to dismiss *instanter*. See *Daleanes v. Board of Education of Benjamin Elementary School District 25, DuPage County*, 120 Ill. App. 3d 505, 509-10 (1990) (change in attorneys during relevant time period constituted good cause to extend filing deadline). Moreover, even when the State's filing of a motion to dismiss is untimely, a defendant is not entitled to a remedy unless he can show that he was prejudiced by the delay. See *People v. Cortez*, 338 Ill. App. 3d 122, 128 (2003). The defendant was in no way prejudiced by the State's late filing, as he was allowed to respond to it and the matter was properly set for hearing.

¶ 23    We next address the plaintiff's claim that the circuit court erred in granting the defendants' motion to dismiss his claims under section 2-615 of the Code (735 ILCS 5/2-615

(2020)). A section 2-615 motion to dismiss tests the legal sufficiency of the complaint. The question on review is whether the allegations of the complaint, taken as true and viewed in a light most favorable to the plaintiff, are sufficient to state a cause of action upon which relief can be granted. *Cowper v. Nyberg*, 2015 IL 117811, ¶ 12. A cause of action should not be dismissed pursuant to section 2-615 "unless it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to recovery." *Id.* We review dismissal pursuant to section 2-615 *de novo*. *Id.*

¶ 24     *Mandamus* is "an extraordinary remedy traditionally used by courts to compel a public official to perform a ministerial duty." *People ex rel. Madigan v. Snyder*, 208 Ill. 2d 457, 464 (2004). It may be invoked only to compel "the performance of official duties by a public officer where no exercise of discretion on his part is involved." *Lewis E. v. Spagnolo*, 186 Ill. 2d 198, 229 (1999) (quoting *Madden v. Cronson*, 114 Ill. 2d 504, 514 (1986)). *Mandamus* may not be used to correct an exercise of discretion by a public official—even if erroneous—nor require an inferior tribunal to reach a certain decision nor exercise its discretion in a specific way. *Daley v. Hett*, 113 Ill. 2d 75, 80 (1986). "A complaint seeking a writ of *mandamus* must allege facts that establish (1) a clear right to the relief requested; (2) a clear duty of the defendant to act; and (3) the clear authority of the defendant to comply with the writ." *Ratliff-El v. Briley*, 338 Ill. App. 3d 1070, 1073 (2003).

¶ 25     Thus, our first step is to determine whether the plaintiff is entitled to the relief requested. *Id*. Our supreme court has held the proper analysis of an inmate's allegations of violations of Department regulations begins with a determination of whether the Department regulations at issue create judicially enforceable rights for inmates. *Fillmore v. Taylor*, 2019 IL 122626, ¶ 38. "It is only if those regulations create judicially enforceable rights for inmates that we consider

8

whether plaintiff was entitled to *mandamus* based upon defendants' alleged failure to comply with those regulations." *Fillmore*, 2019 IL 122626, ¶ 38. The *Fillmore* court's consideration of that issue focused on the United States Supreme Court's decision in *Sandin v. Conner*, 515 U.S. 472 (1995), which reexamined the circumstances under which state prison regulations afforded inmates a liberty interest protected by the Due Process Clause, including its prior decision in *Wolff v. McDonnell*, 418 U.S. 539 (1974). *Fillmore*, 2019 IL 122626, ¶ 39. Ultimately, the *Fillmore* court determined that, "in the context of prison disciplinary proceedings, a prisoner is entitled to due process protections, such as the procedural protections set forth in *Wolff*, only when the penalty faced by the prisoner implicates a liberty interest because it affects the nature or duration of his confinement." *Fillmore*, 2019 IL 122626, ¶ 48. Stated differently, "it is not the violation of the Department regulations itself that gives rise to a cause of action but, rather, the interest affected by the discipline imposed for that violation." *Fillmore*, 2019 IL 122626, ¶ 54.

¶ 26      Under certain circumstances, States may create liberty interests protected by the Due Process Clause. *Sandin*, 515 U.S. at 483-84.

> "But these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, see, *e.g.*, *Vitek* [*v. Jones*,] 445 U.S. [480,] 493 [(1980)] (transfer to mental hospital), and *Washington* [*v. Harper*,] 494 U.S. [210,] 221-222 [(1990)] (involuntary administration of psychotropic drugs), nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. After reviewing the disciplinary actions available to the Department in section 504.80(k)(4) of Title 20 of the Illinois

9

Administrative Code (20 Ill. Adm. Code 504.80(k)(4)), amended at 27 Ill. Reg. 6214 (eff. May 1, 2003), the *Filmore* court stated that, "with limited exceptions, none of the disciplinary actions set forth in the Department's regulations impose atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Fillmore*, 2019 IL 122626, ¶¶ 46-47.

¶ 27    In *Fillmore*, 2019 IL 122626, ¶ 12, the petitioner had received the following discipline: "one year of C-grade status, one year in segregation, one year of contact visit restrictions, the loss of one year of good conduct credits, and one year of a $15 per month restriction." Our supreme court only found the revocation of statutory good time or good conduct credits implicated a liberty interest. *Fillmore*, 2019 IL 122626, ¶ 56. Specifically, the court determined, " '[a]s a general rule, only sanctions which result in loss of good conduct time credits for inmates who are eligible for release on mandatory supervision or which otherwise directly and adversely affect release on mandatory supervision will impose upon a liberty interest.' " *Fillmore*, 2019 IL 122626, ¶ 56 (quoting *Spicer v. Collins*, 9 F. Supp. 2d 673, 685 (E.D. Tex. 1998)).

¶ 28    It should be noted that in the case before us, the plaintiff did not lose any good conduct credits that he had already earned, but he has argued that because of the discipline imposed upon him he has been prevented from holding a prison job where he would have had the *opportunity* to earn good time credits. Because good time credits do not "inevitably affect the duration of [a] sentence," denying an inmate the opportunity to earn them does not infringe on a liberty interest. *Babcock v. White*, 102 F.3d 267, 274 (7th Cir. 1996) (inmate's allegation that remaining in segregation due to delay of transfer to different facility prevented earning of good time credits did not impact liberty interest); *see also Zimmerman v. Tribble*, 226 F.3d 568, 572 (7th Cir. 2000) (allegation that inmate would have received good time credits did not create liberty

10

interest supporting due process claim). Accordingly, we find the plaintiff did not plead any facts showing the discipline he received imposed an atypical and significant hardship in relation to the ordinary incidents of prison life. As such, the plaintiff did not plead a liberty interest subject to protection by the Due Process Clause. Thus, because plaintiff is not entitled to the relief requested in his petition, the plaintiff failed to state a cause of action for *mandamus* relief and the circuit court properly granted the defendants' section 2-615 motion to dismiss.

¶ 29                                III. CONCLUSION

¶ 30        The judgment of the circuit court of Will County is affirmed.

¶ 31        Affirmed.