Alexander ZEMKE, Plaintiff–Appellant,

v.

CITY OF CHICAGO, Defendant–Appellee.

No. 96–1066.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 13, 1996.

Decided Nov. 13, 1996.

Gerald A. Goldman, Arthur R. Ehrlich (argued), Jonathan C. Goldman, Chicago, IL, for Plaintiff–Appellant.

Lawrence Rosenthal, Thaddeus Machnik, Benna R. Solomon, Anne Berleman Kearney (argued), Susan S. Sher, Office of the Corporation Counsel, Appeals Division, Chicago, IL, Barbara L. Anderson, City of Chicago, Department of Law, Chicago, IL, for Defendant–Appellee.

Before RIPPLE, DIANE P. WOOD and EVANS, Circuit Judges.

TERENCE T. EVANS, Circuit Judge.

Alexander Zemke filed a complaint in state court against the City of Chicago, but the City removed the case to the district court for the Northern District of Illinois because it contained a federal claim alleging a violation of due process of law actionable under 42 U.S.C. § 1983. The complaint also alleged state law claims for breach of contract and declaratory judgment. All claims were dismissed on a Rule 12(b)(6) motion and Zemke appeals.

We assume, for purposes of our *de novo* review of a decision granting a motion to dismiss a complaint, that its allegations are true. The complaint tells us that Zemke was an electrician, employed by the City of Chicago. In 1989 he was injured on the job and could not perform his usual duties. In May 1991 his doctor released him to return to the job. In August 1991 he was notified that the City had an opening for an electrician in its water department. Zemke interviewed for the position and afterwards Stephen Carmody (Carmody, who is not a party to this suit, apparently works for Chicago's department of personnel but his exact position is not identified in the complaint) repeatedly advised Zemke that the job was his and that all necessary paperwork had been completed.

Zemke alleges that he told Carmody that he accepted the position; in fact, during the tail end of 1991 and throughout 1992, he says he called Carmody continually to find out when he should report to work. He was told to be patient; the City would get back to him. However, he was never given a starting date or placed in the position. Finally, he was told that "something" caused the delay. Eventually, in 1994, he was placed in a different position.

Also in 1994, Zemke reviewed his personnel file. To his surprise, he discovered it contained an undated "Notice of Job Offer" which offered him the position in question as an electrical mechanic in the water department with a starting date of October 16, 1991. Under the personnel rules for the City, the commissioner of personnel, the budget director, and the head of the department in which a position exists must approve an applicant's appointment to the position. The notice found in Zemke's personnel file, attached to the complaint as Exhibit A, was signed by the department head, the commissioner of personnel, and the budget director. The notice includes instructions regarding acceptance of the offer: "Please indicate your acceptance or non-acceptance by checking one box and signing below." Zemke says he never received and for that reason never signed the document.

The district court dismissed the complaint, stating that Zemke had no cognizable property interest in the new job. In arriving at that conclusion, the court necessarily determined that no binding contract, oral or written, existed between Zemke and the City of Chicago. Accordingly, both the state law contract claim and the request for a declara-

tory judgment were dismissed, along with the federal claim under § 1983.

We will affirm the dismissal of a complaint if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984). We accept as true all facts alleged in the complaint and draw all reasonable inferences from those facts in favor of Zemke. *Mosley v. Klincar,* 947 F.2d 1338 (7th Cir.1991).

Although Zemke's complaint has other deficiencies, we'll move quickly to one that dooms his federal claim. In any case alleging a denial of due process for the deprivation of a property right, the basic question is whether the property right exists. Such a right must be based on a source independent of the Constitution—for instance, state law or, in this case, a contract with the state. In order to be constitutionally cognizable, the property right must involve something to which a person has a "legitimate claim of entitlement." A unilateral expectation is not sufficient. *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Buttitta v. City of Chicago,* 9 F.3d 1198 (7th Cir.1993).

Essentially, although he attempts to avoid so limiting his argument, Zemke claims that either a written or oral contract gave him a protectable property interest. We agree, however, with the district court that no such interest arose.

The elements of a contract, taught like the ABC's to first-year law students, are offer, acceptance, and consideration. Zemke claims that the "Notice of Job Offer" was a written offer, which he accepted. Although the notice was signed by the appropriate city officials and was, undeniably, an offer, it was never, for unexplained reasons, communicated to Zemke. The undated document was simply placed in Zemke's personnel file. He did not learn of it until nearly three years after it was apparently prepared. It follows, then, that Zemke never accepted the offer—he did not even know it existed. Under the terms of the offer, Zemke's acceptance, to be effective, had to be in writing. Within five days of receiving the offer, Zemke was required to check the appropriate response, sign the form, and return it to the City. And the City can, under Illinois law, require acceptance of an offer to be in writing. *LaSalle National Bank v. Vega,* 167 Ill.App.3d 154, 117 Ill.Dec. 778, 520 N.E.2d 1129 (1988). There was no written acceptance here as called for in the offer—no formal acceptance means no written contract capable of supporting a protectable property interest under § 1983. So the federal claim, on this theory, was properly dismissed.

Zemke's better, but also unsuccessful, claim is that statements by Carmody that Zemke "had the job" created an enforceable oral contract, which, in turn, gave rise to a protectable property interest. As did the district court, we reject this contention. In the first place, under Illinois law, oral employment contracts are viewed more skeptically than written ones. *Tolmie v. United Parcel Service, Inc.,* 930 F.2d 579 (7th Cir. 1991). To be enforceable, an oral contract must contain terms which are definite and certain. In this case, there are no allegations that Carmody stated the date when employment would begin or what Zemke's salary would be. In fact, for an incredibly long period of time Carmody stalled, apparently telling Zemke that although there was a job there would be a delay of uncertain length before employment would start. Carmody seems to have been nothing if not vague. Furthermore, an informal assurance by an official who is not authorized to make it does not provide the basis for establishing a protectable constitutional property interest. As we pointed out in another of the many employment cases involving the City of Chicago, promises may very well have been made, but they do not give rise to a property interest unless they are made by the right people. *Santella v. City of Chicago,* 936 F.2d 328 (7th Cir.1991). There is no allegation that Carmody was authorized to enter into an oral contract of employment with Zemke that would bind the City of Chicago. The alleged oral contract does not give rise to a protectable property right.

Zemke also alludes briefly to a property right based on a theory of promissory estoppel. We decline to consider this theory because it was not raised in the district court. The federal claim under § 1983 was therefore properly dismissed.

Our discussion of why no enforceable contract—written or oral—supports a deprivation of property claim under § 1983 also dooms the state breach of contract claim which the district court dismissed. That leaves only the state claim for declaratory judgment which also met the ax. The declaratory judgment claim is, at heart, a request to declare that a contract existed. Because the district court concluded that no contract existed for purposes of its § 1983 analysis, the declaratory judgment claim was also dismissed. We have carefully considered whether any other basis exists to support a declaratory judgment claim and conclude that there is none. The district court properly dismissed the claim.

AFFIRMED.