Elton J. CRIM, Plaintiff–Appellant,

v.

BOARD OF EDUCATION OF CAIRO SCHOOL DISTRICT NO. 1, Charles Althoff, individually, Kenneth R. Jones, individually, et al., Defendants–Appellees.

No. 97–1749.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 9, 1998.

Decided May 29, 1998.

Gene A. Turk, Jr. (argued), Carbondale, IL, for Plaintiff–Appellant.

Raymond J. Kelly, Joan E. Gale, Allegra R. Rich, Jill D. Leka (argued), Seyfarth, Shaw, Fairweather & Geraldson, Chicago, IL, for Defendants–Appellees.

Before FLAUM, RIPPLE and ROVNER, Circuit Judges.

RIPPLE, Circuit Judge.

The Board of Education of Cairo School District No. 1 decided that it would not renew Elton Crim's contract as superintendent of schools for the district, and further decided that it would relieve him of his duties as superintendent for the remainder of his present contract year. Dr. Crim then filed suit against the Board, alleging racial discrimination under Title VII, a Fourteenth Amendment due process claim and a state law breach of contract claim. The district court granted summary judgment for the Board. For the reasons set forth in the following opinion, we affirm the judgment of the district court.

## I

## BACKGROUND

### A. *Facts*

On July 15, 1993, the Board hired Elton Crim, who is black, as superintendent of schools for the district. Dr. Crim signed a written contract with the Board.[1] At that time, the seven-member Board was composed of six black members and one white member. After the November 1993 elections, however, the composition of the Board changed; it then consisted of four black and three white members. The newly elected members—three white members (defendants Charles Althoff, Scott Walston and Kenneth R. "Duke" Jones) and one black member (defendant Joseph Holder)—ran on a platform that focused on improving the school district's finances.

In January 1994, the Board conducted an evaluation of Dr. Crim's performance as superintendent. Just prior to the January meeting, Board member Jones told Dr. Crim that, based on his informal conversations with other Board members, he believed that the Board was not going to renew Dr. Crim's

---

1. Pertinent to this lawsuit are the following provisions of the employment contract:

3. The Employee [Crim] shall commence his work hereunder on July 1, 1993. The Employee's employment with the Employer [Board] shall be reviewed by the Employer on or before the Employer's January, 1994, Board meeting. At that meeting, the Employer will then consider the issue of whether to extend the Employee's employment beyond the initial term of this contract. The Employer shall not be required to take action either extending or not extending this agreement before the April, 1994, Board meeting and in the event the Employer does not take specific action to extend this agreement, it shall terminate on June 30, 1994, without any further notice to Employee as required by 105 ILCS 5/10–21.4.

. . . .

14. Employee's employment with Employer may be revoked, terminated, changed, or modified from time to time by Employer in its sole discretion or at its pleasure, for cause. . . .

Before the Employer revokes, terminates, changes, or modifies Employee's employment

hereunder for cause under this Paragraph, the Employee will be accorded the following due process:

(a) The Employer shall notify the Employee of the nature of the charge against the Employee with respect to the revocation, termination, change, or modification of Employment for cause at least fourteen (14) days prior to the hearing described hereafter;

(b) After the aforementioned fourteen (14) day notice to Employee, the Employer shall conduct a hearing on the question of the revocation, termination, change, or modification of Employee's employment with Employer for cause, and at such hearing, which shall be in closed session, the Employee may present evidence, witnesses, or any defense in opposition to the charge that his employment should be revoked, terminated, changed, or modified for cause;

(c) Only after the aforementioned notice to Employee and due process hearing shall the Employer revoke, terminate, change, or modify Employee's employment for cause under this paragraph.

R.47, Ex.A.

contract for the following school year. Jones then recommended that Dr. Crim resign; the superintendent did not. When the Board convened that evening, the individual Board members discussed with Dr. Crim their written evaluations of his performance. An unofficial "straw" vote taken at the meeting indicated that most of the Board did not want to renew Dr. Crim's contract; no official vote was taken, however. All agree that Dr. Crim told the Board what would occur if the Board "dumped" him; there is disagreement, however, about the tenor of his remarks. The defendants claim that Dr. Crim threatened that, if his contract was not renewed, he would stop funding bonds and stop the purchase of teacher order certificates (which apparently are necessary to hire teachers for the following school year). Dr. Crim contends that he simply informed the Board that if it "dumped" him, the district would not be able to get their teacher orders and funding bonds. He claims he conveyed this information not as a threat but as practical advice. He then left the meeting before its adjournment.

At the next Board meeting, held February 16, 1994, Board member Althoff presented a bill of particulars that set forth reasons for not renewing Dr. Crim's contract for the upcoming academic year. Althoff had compiled these reasons from comments made to him by other Board members concerning their dissatisfaction with Dr.Crim. At the closed executive session of the meeting, the Board discussed each item of the bill out of Dr. Crim's presence. It then reviewed the reasons with Dr.Crim. When the Board asked the superintendent if he would fulfill the remainder of his one-year contract even though he would not be renewed for the following year, Dr. Crim told the Board that he would not. He then left the meeting. At that point, the Board voted on the issues of Dr. Crim's nonrenewal and suspension. Four of the seven Board members, defendants Althoff, Jones, Walston and Holder, voted not to renew Dr. Crim's contract and

to relieve him of his duties. Because the district was in the middle of a reduction-in-force collective bargaining negotiation with its teachers, the Board immediately appointed Dr. Elaine Bonifield, the assistant superintendent, who is white, as interim superintendent.

On February 17, 1994, the Board gave Dr. Crim written notice of its intent not to renew his contract for the following school year. Attached to the notice were the Board's "Resolution on Superintendent's Contract" and the final draft of the bill of particulars. The reasons for nonrenewal listed in the bill included the Board's displeasure with Dr. Crim for (1) withholding information about the district's financing from the Board members he said he did not trust; (2) threatening to interfere with the district's financing and teacher orders; (3) leaving the January Board meeting before its adjournment and before the discussion of proposed budget cuts; (4) scheduling Board meetings without following the proper procedures, such as adequate notice; (5) conducting a special Board meeting without a quorum; (6) filing erroneous tax documents with the County Clerk; (7) allowing official documents to leave his office with grammatical and typographical errors in them; (8) failing to seek legal advice; and (9) exhibiting a general lack of knowledge about school finance. As a final note, the bill stated that the Superintendent's contract, by its terms, did not require the Board to give him its reasons for nonrenewal. In fact, it reported, the contract would expire without any action on the part of the Board on June 30, 1994.[2]

One week later, Dr. Crim requested a hearing. The hearing was held on March 29, 1994. Dr. Crim waived his right to a closed session hearing. During the hearing, the Board did not allow Dr. Crim to question any Board member as a witness.

Dr. Crim filed his complaint in federal court on March 2, 1994 and an amended

---

2. The Board decided, during its executive session on March 5, 1994, that the bill of particulars should remain confidential. However, Dr. Crim attached the bill of particulars, along with the notice of intent not to renew his contract, to his

complaint when he filed the complaint on March 2, 1994. On March 12, 1994, the newspaper Southern Illinoisan published an article which referred to the details contained in the final bill of particulars.

complaint on August 11, 1995.[3] The district court dismissed Counts I and VI, which were based upon 42 U.S.C. § 1983 and a state law libel action. The defendants sought summary judgment on the remaining counts, Count II (Title VII), Counts III and IV (Fourteenth Amendment due process claims), and Count V (breach of contract).

## B. *Opinion of the District Court*

Reviewing first Dr. Crim's Title VII claim, the district court noted that Dr. Crim had offered no direct evidence of discrimination.[4] Turning to the *McDonnell Douglas* indirect method of establishing discrimination,[5] the district court determined that the Board's proffered reasons for not renewing Dr. Crim's contract or for relieving him of his duties as superintendent for the remainder of the school year were legitimate and nondiscriminatory. Following the burden-shifting analysis used in employment termination cases, the district court found that Dr. Crim had failed to prove that the Board's proffered reasons were a pretext for racial discrimination.

According to the court, Dr. Crim had shown no factual dispute concerning the Board's honesty in its dissatisfaction with Dr. Crim's performance as superintendent, as stated in the bill of particulars, and in its belief that he would not continue to serve out the remaining time on his contract.[6] More-over, noted the court, his evidence gave no indication of a connection between the Board's decisions and the fact that Dr. Crim is black.[7] The court granted the Board's motion for summary judgment on the Title VII count.

Turning to Dr. Crim's due process allegation, the court likewise found no merit to Dr. Crim's alleged deprivation of a property right without due process. The court determined that Dr. Crim had no property right in a second year of employment as superintendent under either his employment contract or state law. Moreover, although Dr. Crim did have a property right in the continuation of his employment for the present year, the court determined that he had suffered no deprivation because he had continued to receive full salary and benefits under the contract. The court held that Dr. Crim's due process claim thus failed.[8]

Dr. Crim's breach of contract claim was equally unsuccessful. The court determined that, under his contract, the superintendent was not entitled to serve a second year or to be renewed automatically. With respect to his suspension, the court noted that Dr. Crim did not receive the required 14–day notice before the hearing, but concluded that he had suffered no compensable injury. Finally, the court found that Dr. Crim had offered no admissible evidence that he did not receive accrued vacation pay; therefore, the court

---

3. Dr. Crim received his notice of right to sue from the Equal Employment Opportunity Commission on August 7, 1995.

4. The district court initially recognized that individuals cannot be liable under Title VII and thus granted the motion for summary judgment with respect to the individual defendants Althoff, Jones, Walston and Holder. Dr. Crim did not challenge that ruling.

5. *See infra* note 9 and accompanying text.

6. The court considered Dr. Crim's claims—accusations concerning the legality of his employment contract, the Board's failure to comply with Board policy, the truth of the events set forth in the bill of particulars, and the improprieties of outside meetings by some Board members—and found that Dr. Crim failed to create a genuine issue of material fact as to whether the Board's proffered reasons were a pretext for racial discrimination.

7. The court found that no reasonable jury would conclude that racial discrimination had occurred based on the facts that three of the four Board members who voted not to renew his contract and to relieve him of his duties were white; that the members met outside the official Board meetings; and that the member who drew up the bill of particulars and the person who replaced Dr. Crim for the remainder of his year of duty were white.

8. The district court also found that Dr. Crim was not deprived of a protected liberty interest without due process. Dr. Crim had claimed that the Board had published defamatory statements about him in the bill of particulars; however, the newspaper had obtained that information from Dr. Crim's own complaint, which was a public document in his court file. It thus granted summary judgment to the defendants on Count IV. Dr. Crim has not challenged that ruling on appeal.

held, no reasonable jury could find that Dr. Crim suffered any damages by the Board's breach of his employment contract. The court granted the defendants' motion for summary judgment.

## II

## DISCUSSION

### A. *Summary Judgment*

■ We review de novo the district court's ruling on the motion for summary judgment. We shall affirm the district court's decision if the party seeking summary judgment has demonstrated, through its pleadings and the depositions, answers to interrogatories, admissions and affidavits it has filed, that no genuine issue of material fact exists for trial and that it is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c); *Celotex v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). We view all the facts in the record and draw all reasonable inferences in favor of the nonmoving party, Dr. Crim, and we place the burden of demonstrating that there is no genuine issue of material fact on the moving party, the Board. However, Dr. Crim may not rely upon mere allegations; he must set forth specific facts showing a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *Gonzalez v. Ingersoll Milling Mach. Co.,* 133 F.3d 1025, 1031 (7th Cir.1998). In employment discrimination cases such as the one now before us, we apply the summary judgment standard with rigor because motive, intent and credibility are crucial issues. *See Oates v. Discovery Zone,* 116 F.3d 1161, 1168 (7th Cir.1997) (citing *Courtney v. Biosound, Inc.,* 42 F.3d 414, 418 (7th Cir.1994)).

### B. *Title VII Claim*

■ Title VII forbids an employer covered under the Civil Rights Act "to fail or refuse to hire or to discharge any individual ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.

§ 2000e–2(a)(1). To prevail on his claim, Dr. Crim "must show 'that the basis for [his] termination was the impermissible consideration of race, i.e., that a person of another race would not have been discharged under similar circumstances.' " *Cowan v. Glenbrook Sec. Servs., Inc.,* 123 F.3d 438, 442 (7th Cir.1997) (quoting *Rush v. McDonald's Corp.,* 966 F.2d 1104, 1112 (7th Cir.1992)).

■ A Title VII plaintiff may choose to establish his case of employment discrimination through direct or indirect evidence. As the district court correctly noted, Dr. Crim has not alleged any direct evidence of discrimination. Instead, he relies only on circumstantial evidence of discriminatory motive for his discharge. Therefore, under the indirect *McDonnell Douglas* burden-shifting method, he must shoulder the initial burden of establishing a prima facie case of discriminatory discharge.[9] *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Once the prima facie case is made, there is a presumption of discrimination. The burden of production then shifts to the defendant to offer a nondiscriminatory reason for its employment decision. *Cowan,* 123 F.3d at 445. If the employer successfully presents such a reason, then the presumption of discrimination drops from the case and the employee "must show that the defendants' proffered reason for the dismissal was false and only a pretext for discrimination," *Bahl v. Royal Indemnity Co.,* 115 F.3d 1283, 1290 (7th Cir.1997)-"i.e., that race more likely motivated the employer." *Cowan,* 123 F.3d at 445. Notably, " '[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.' " *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (quoting *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)).

---

**9.** A plaintiff claiming discriminatory discharge must show that (1) he belongs to a protected class such as a racial minority, (2) his job performance met his employer's legitimate expectations, (3) he was discharged, and (4) the employer treated similarly situated persons of a different race more favorably. *See Oates,* 116 F.3d at 1171; *Plair v. E.J. Brach & Sons, Inc.,* 105 F.3d 343, 347 (7th Cir.1997).

The district court, noting that there was a factual dispute about some aspects of Dr. Crim's overall performance as superintendent, assumed, for the purpose of deciding this summary judgment motion, that Dr. Crim was able to make out a prima facie case of employment discrimination. It focused on the next step in the *McDonnell Douglas* test, the Board's burden to set forth legitimate, nondiscriminatory reasons for its actions. The district court found that the Board's reasons for nonrenewal, listed in the bill of particulars, and its reason for relieving him of his duties immediately because Dr. Crim himself declined to work to the end of his contract, were legitimate and nondiscriminatory. It next turned to Dr. Crim's submission that the Board's proffered reasons were a pretext for race discrimination and concluded that he failed to prove pretext.

Before us, the parties also focus on the issue of pretext and we shall therefore begin our discussion at that point.

1. Nonrenewal of employment contract

 Dr. Crim contends that he can survive summary judgment as long as he casts sufficient doubt on the validity of the Board's reasons. This contention indicates a misapprehension of the role of the Title VII plaintiff utilizing the burdenshifting *McDonnell Douglas* analysis. The case law firmly establishes that, once a defendant employer produces evidence of a nondiscriminatory reason for the termination, the employee must demonstrate that the employer's proffered reason for the dismissal was not the actual reason and that it was only a pretext for discrimination. *See St. Mary's Honor Ctr.*, 509 U.S. at 508, 113 S.Ct. 2742; *Bahl*, 115 F.3d at 1290. In short, the employee has the burden of showing that the employer's reason for the dismissal was a lie (see *Russell v. Acme–Evans Co.*, 51 F.3d 64, 68 (7th

Cir.1995)) or had no basis in fact (*see Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir.1996)). It is not sufficient to prove that the reason was doubtful or mistaken. *See Russell*, 51 F.3d at 68 (explaining that "pretext" does not mean simply a "mistake," but rather "a lie, specifically a phony reason for some action"). Even if the Board's reasons for not renewing Dr. Crim's contract were mistaken, ill-considered or foolish, if the Board honestly believed in those reasons then pretext has not been proven. *See Brill v. Lante Corp.*, 119 F.3d 1266, 1270 (7th Cir.1997); *Pollard v. Rea Magnet Wire Co.*, 824 F.2d 557, 559 (7th Cir.), cert. denied, 484 U.S. 977, 108 S.Ct. 488, 98 L.Ed.2d 486 (1987). "Because a Title VII claim requires intentional discrimination, the pretext inquiry focuses on whether the employer's stated reason was honest, not whether it was accurate." *Helland v. South Bend Community Sch. Corp.*, 93 F.3d 327, 330 (7th Cir.1996), cert. denied, —— U.S. ——, 117 S.Ct. 769, 136 L.Ed.2d 715 (1997); *see also Russell*, 51 F.3d at 69 (noting that "the issue was not the adequacy in fact of his performance ... [but rather] the honesty of the [Board's] belief that it was inadequate"). We do not ask whether the reason for the employment action was "a correct business judgment but whether the decisionmakers honestly acted on that reason." *Bahl*, 115 F.3d at 1291.[10] Thus, we do not review the propriety of the Board's business decision not to renew Dr. Crim's contract; we consider only whether Dr. Crim proved that the reasons for that decision were pretextual because the Board did not honestly believe them.

It is also insufficient to show that *some* of the reasons proffered by the Board were untrue; as long as *one* legitimate, nondiscriminatory reason would have caused the company to dismiss the plaintiff, summary judgment will be upheld.[11] However, when a

---

10. *See Johnson v. University of Wisconsin–Eau Claire*, 70 F.3d 469, 481 (7th Cir.1995) (concluding that neither plaintiff's subjective belief of her own qualifications nor her disagreement with her employer's business decision raises material dispute about the employer's honesty in its asserted reason for a decision); *Billups v. Methodist Hosp. of Chicago*, 922 F.2d 1300, 1304 (7th Cir.1991) (explaining that our inquiry is not "whether the alleged acts actually occurred" but

"whether the employer's belief was honestly held").

11. *See Russell*, 51 F.3d at 69 ("The fact that some of these reasons were successfully called into question by [the plaintiff's] deposition or affidavit does not defeat summary judgment if at least one reason for each of the actions stands unquestioned."); *see also Wolf v. Buss (America) Inc.*, 77 F.3d 914, 920 (7th Cir.1996) (establishing that,

defendant such as the Board presents many grounds for the dismissal or, in this case, nonrenewal of the contract, and those grounds "are so intertwined, or the pretextual character of one of them so fishy and suspicious," *Russell*, 51 F.3d at 70, we could conclude that the plaintiff had withstood summary judgment successfully.

For each reason proffered by the Board for not renewing his contract, Dr. Crim contests the complete accuracy of the accounts upon which the Board relied or he explains the reasons for his actions as the Board reported them. However, he does not contest the fact that each reason in the bill of particulars had some basis in fact and that these reasons, taken together, could lead to

the Board's dissatisfaction with Dr. Crim's poor performance as a superintendent and its decision not to renew his contract.[12] Dr. Crim has failed to establish that the reasons in the bill of particulars were lies or had no basis in fact. He therefore cannot demonstrate that the Board's reasons for dismissing him had no basis in fact. He does not deny that he withheld information from certain Board members,[13] told the Board it could not fund the school district without him,[14] submitted tax documents with errors in them,[15] released at least one official document containing spelling, grammar and typographical errors,[16] and conducted himself inappropriately with respect to some Board meetings.[17] Indeed, he does not even deny

when an employer gives many reasons for termination, the employee "must raise an issue of fact regarding each of the reasons proffered for his dismissal or suffer the affirmance of the district court's grant of summary judgment"), *cert. denied,* —— U.S. ——, 117 S.Ct. 175, 136 L.Ed.2d 116 (1996).

**12.** *See Bahl v. Royal Indem. Co.,* 115 F.3d 1283, 1291–92 (7th Cir.1997) (holding that plaintiff's evidence that some audited files were not as bad as they may have appeared to the audit committee "does not create a genuine issue of triable fact as to whether [the employer's] reason for firing [the plaintiff] was a lie or a phony reason"); *Ost v. West Suburban Travelers Limousine, Inc.,* 88 F.3d 435, 441 (7th Cir.1996) (stating that "plaintiff's own opinions about her work performance or qualifications do not sufficiently cast doubt on the legitimacy of her employer's proffered reasons for its employment actions").

**13.** At the hearing on plaintiff's motion for preliminary injunction, held May 19, 1994, Dr. Crim explained his understanding of each item in the bill of particulars. He testified that he did not trust the Board members who had signed a petition against borrowing money to finance the school district—the newly elected Board members—and therefore did not tell them that the petition was invalid until after the petition period was over. Because he believed it was critically important to borrow money for the financing, he withheld the information that the petition was flawed until it was too late to file another petition. In his deposition of November 22, 1994, Dr. Crim testified that he did not withhold information from the Board members; rather, he simply delayed telling them.

**14.** Dr. Crim testified that he told the Board, "I want you fellows to know that if you dump me, you will not be able to finance your teacher orders and your funding bonds." Tr. at 27; *see also* Crim Dep., R.114, Ex.B at 215. Dr. Crim

considered that statement to be an explanation "to make sure that they understood the relationship between my continuance and their being able to fund the school district." Tr. at 27; *see also* Crim Dep., R.114, Ex.B at 278. The Board considered the statement a threat that he would interfere with the financing.

**15.** Dr. Crim testified that, because he had never filed a Certificate of Tax Levy before, he asked the county clerk to check it. The county clerk pointed out the ways in which Dr. Crim's certificate was different from those submitted by other superintendents, and he corrected it and resubmitted it. He stated that he "should be applauded for diligence." Tr. at 32; *see also* Crim Dep., R.114, Ex.B at 279–80.

**16.** In his deposition of November 22, 1994, Dr. Crim testified that it was true that he did not supervise his secretarial staff adequately. In his appellate brief, Dr. Crim admitted that he had not proofread one letter that contained spelling and grammar errors, but that such a letter, standing alone, should not be held to support his nonrenewal. At the preliminary injunction hearing, Dr. Crim testified that he had "a zero error policy, and we tried hard not to let anything go out that was not pretty much up to snuff. I'm sure some things may have gotten through. They almost invariably do with organizations." Tr. at 33.

**17.** The bill of particulars stated that Dr. Crim scheduled a Board meeting without providing adequate notification or sufficient time parameters. Dr. Crim explained that he called a special meeting of the Board on January 7, 1994, because the bankers wanted Board approval of the loan to the district before the papers were signed-and the papers were scheduled to be signed on January 7. Board President Althoff told him that the meeting had to be called off because

that he has limited knowledge in the area of school finance, as the Board charged. Instead, he asserts that "[t]he Board was well aware of Plaintiff's limitations in this area when he was hired, and it was very unfair to hold this against him, especially in light of the forward progress he had made." [18] Appellant's Br. at 17.

Not only does Dr. Crim fail to present evidence that the Board's reasons were not honestly held, but he objects to having that burden of proof placed on him. Although Dr. Crim denies that he had threatened to interfere with the district's financing efforts, for example, he does not establish that the Board was without a factual basis for concluding that he had threatened to do so. Moreover, he fully admits that his knowledge of financial and budget matters was limited. In sum, Dr. Crim fails to demonstrate that the Board's reasons for its dissatisfaction with his work as superintendent were not bona fide and honestly held. Moreover, none of the other evidence upon which Dr. Crim relies supports his burden of establishing pretext.[19] Accordingly, we must conclude that Dr. Crim failed in his burden of proving pretext.

## 2. Suspension

■ The Board relieved Dr. Crim of his duties as superintendent for the remainder of the 1993–94 school year because Dr. Crim declined to work for the remainder of his contract and, in particular, to work on the school district's financing. The district court determined that the record established that the Board's reason was legitimate and non-discriminatory. It further concluded that Dr. Crim failed to establish that the Board members did not honestly believe that he

---

it was not a bona fide emergency. The bill of particulars also stated that Dr. Crim left the January 13 meeting before the discussion of the proposed budget cuts. Dr. Crim explained that he left the January 13 meeting before its adjournment because it was near midnight and he was "really stressed out." Tr. at 30.

18. In his deposition of November 22, 1994, Dr. Crim testified that "[w]hatever lack of knowledge that I had about school financing did not interfere with the operation of Cairo schools in one iota.... And by the time they're writing this nonsense [the bill of particulars], I had learned what I didn't know when I started or much of what I didn't know when I started." R.114, Ex.B at 282.

It is noteworthy that, when Board member Jones suggested to Dr. Crim that he resign because the Board probably would vote not to renew his contract, the reason Jones gave for the Board's decision was that the Board members felt Dr. Crim did not have enough financial experience and expertise. Dr. Crim did not believe that reason; he testified that he had kept the district "afloat, and was on the verge of wiping out their indebtedness through loans." Tr. at 18. He believed the reason was racial.

19. Dr. Crim asserts, for example, that the white members of the Board made decisions outside the regular Board meetings, that white Board member Althoff tried to prevent the special meeting that Dr. Crim called in January 1994 and drew up the bill of particulars on his own, and that a white woman, Dr. Elaine Bonifield, was at the meeting when the Board voted to suspend Dr. Crim so that she could be appointed interim superintendent. He also accuses Bonifield of remarking that there was an unwritten code in Cairo, Illinois, that blacks and whites do not associate. The district court correctly concluded that a reasonable jury could not infer illegal discrimination merely because Dr. Crim is black and some of the decisionmakers and his replacement are white. The decision not to renew Dr. Crim's contract was made by one black and three white Board members; it cannot be characterized reasonably as a secret overthrow by white members. Dr. Crim points to no law or regulation that prohibited the Board members from meeting other than in official session. Moreover, it is noteworthy that Dr. Althoff was president of the Board at the time in question. He surely had the right to question whether a Board meeting (such as the one Dr. Crim called for on January 7) constituted an "emergency" that would allow waiver of timely notice. In addition, Althoff complied with the requirements of Dr. Crim's employment contract by reviewing Dr. Crim's employment in the January 1994 Board meeting and by raising considerations as to whether to extend his contract. For the February meeting, Althoff listed the reasons for not extending Dr. Crim's contract suggested by Board members. He presented those reasons, in a bill of particulars, for full discussion by the Board and with Dr.Crim. Moreover, we have no reason to consider the alleged derogatory comments of Bonifield, who was promoted to acting superintendent when Dr. Crim refused to continue carrying out his duties. The district court found the evidence inadmissible. Even if it were properly before the court, there is no evidence that Bonifield was a decisionmaker or that she was able to influence the Board to suspend Dr. Crim; therefore, the remarks attributed to her are not actionable under Title VII. See Bahl, 115 F.3d at 1293 & n. 11 (citing cases).

would not continue to serve out the remaining time on his contract; consequently, he failed to prove that the reason was a pretext for racial discrimination.

Dr. Crim asserts on appeal that the Board suspended him from his duties before it voted not to renew his contract.[20] He now contends that the order of these events (suspension before nonrenewal) was material and that the district court erred in refusing to allow him to challenge the factual underpinnings of the reasons. Dr. Crim does not present evidence from the record to support his ordering of events; nor does he explain why it makes any difference. We believe that, in the context of Dr. Crim's Title VII claim, it is of no consequence whether the Board decided first on suspension or on nonrenewal. Dr. Crim has the burden of proving by a preponderance of the evidence that the Board's proffered reason for relieving him of his present duties was pretextual. Dr. Crim admitted that that reason was not a false one; he certainly did refuse to continue serving as superintendent for the remainder of his contract.[21] Dr. Crim did not attempt to show that the Board did not honestly believe that he would not fulfill the balance of his contract. Consequently, he has failed to

prove pretext. We concur with the decision of the district court that no reasonable jury could infer that the Board suspended him for discriminatory reasons.

In conclusion, we hold that Dr. Crim failed to carry his burden of demonstrating that the Board's proffered reasons for refusing to renew his contract and for suspending his present contract were pretextual and that the real reason was racial discrimination. We therefore affirm the summary judgment determination of the district court on the Title VII count.

### C. Due Process Claim

In Count III of his amended complaint, Dr. Crim alleges that he was deprived of a property right without due process of law. Specifically, he claims that the Board deprived him of his right to a second year of employment as superintendent under his contract when it suspended him and failed to renew his contract for the following year.

Dr. Crim claims that he has a property interest in a second year of employment as superintendent because state law, specifically 105 ILCS 5/10–21.4,[22] requires that his contract be renewed automatically unless the

---

20. In his brief, Dr. Crim asserts that the Board first suspended him and then offered to "reinstate" him to assist in the financing efforts. He claims that he asked if he was entitled to a hearing on the suspension and nonrenewal decision; he then thanked the Board and left. According to Dr. Crim, he "was never offered his job back." Appellant's Br. at 21. At the hearing on his motion for preliminary injunction, however, Dr. Crim's testimony contradicted that ordering of events. On crossexamination he agreed that the Board voted first not to renew his contract and second to relieve him of his duties.

21. At the preliminary injunction hearing, Dr. Crim testified that the Board asked him to stay to finish his contract and to find financing for the district and that he refused. He explained:

I rejected [staying in the position of superintendent to handle the financing] because I really didn't believe I could finance the school district. I didn't believe they wanted the school district financed, really, because my impressions were that they had signed the petitions.... And I perceive in my perceptions where it was at, they were trying to prevent me as a black superintendent from being successful, and that they would hold funding as hostage in order to cause me to fail. And so I just

figured that there was no sense in my staying under those kinds of circumstances.
Tr. at 29. He further testified that he asked if he had a right to a hearing and if his salary would be continued; the Board said "yes" to each question. He then told the Board he would turn in the keys to the car and clear out his office the next day. Tr. at 65–66.

22. Section 10–21.4 of the School Code, in pertinent part, provides:

Superintendent—Duties.... [T]o employ a superintendent who shall have charge of the administration of the schools under the direction of the board of education....
Notice of intent not to renew a contract must be given in writing stating the specific reason therefor by April 1 of the contract year unless the contract specifically provides otherwise. Failure to do so will automatically extend the contract for an additional year. Within 10 days after receipt of notice of intent not to renew a contract, the superintendent may request a closed session hearing on the dismissal. At the hearing the superintendent has the privilege of presenting evidence, witnesses and defenses on the grounds for dismissal.
105 ILCS 5/10–21.4.

Board gives notice to him, states the reasons for nonrenewal in writing, and affords him a hearing on the decision not to renew. He asserts that the district court erred in holding that Dr. Crim had no such property right. In his view, paragraph 3 of his contract, which automatically terminated rather than renewed his contract if the Board failed to act, is unenforceable because it contravenes state law and Board policy. He further claims that the Board should not have taken action against him until after he received notification of its reasons and a hearing to challenge the decision, as required by state law. He also claims that he was precluded from challenging the Board's stated causes for his nonrenewal because he was prevented from examining witnesses at the hearing.

Dr. Crim finally asserts that he suffered a due process violation when he was suspended and that he should be given a trial on damages because he was not paid any of his accrued vacation pay and was denied the opportunity to attend professional meetings and to enjoy other intangible benefits.

### 1.

 We turn first to the allegation that Dr. Crim was denied due process of law when he was denied renewal of his contract. Dr. Crim's allegation that he was denied due process for the deprivation of a property right depends first on whether he has a property right in the renewal of his contract. *See Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir.1996). To establish a cognizable property right in his employment "of the sort that the Constitution protects," *see Border v. City of Crystal Lake*, 75 F.3d 270, 273 (7th Cir.1996), Dr. Crim must present a legitimate claim of entitlement, not just a hopeful expectation. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Jones v. City of*

*Gary*, 57 F.3d 1435, 1440 (7th Cir.1995). The property interest Dr. Crim claims in his superintendent position is not one created by the Constitution; instead, it is one created and defined "by existing rules or understandings that stem from an independent source such as state law," *Roth*, 408 U.S. at 577, 92 S.Ct. 2701, or contract, *see Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976); *Zemke*, 100 F.3d at 513; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 944 (7th Cir.1996). "A person's interest in a benefit, such as continued employment, constitutes 'property'. for due process purposes only if 'there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit.'" *Border*, 75 F.3d at 273 (quoting *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972)).

Dr. Crim emphasizes that § 10–21.4 of the School Code governs the employment of school superintendents. *See* 105 ILCS 5/10–21.4. In pertinent part, it provides that a superintendent's contract is extended automatically for another year unless he is notified that the contract will not be renewed.[23] The statute provides that the notice of nonrenewal of contract "must be given in writing stating the specific reason therefor by April 1 of the contract year." *Id.* Dr. Crim's employment contract also states that his employment contract terminates on June 30, 1994, "in the event the Employer does not take specific action to extend this agreement." This proviso never took effect; the Board did take specific action not to extend the contract. We therefore need not decide whether the district court was correct in suggesting that the statute permitted the Board to abrogate by contract the entire notice requirement. Because the Board complied with this code provision, we need not decide whether the contract provision is a permissible deviation from the statutory re-

---

**23.** "[T]o terminate a superintendent's employment as superintendent, the district's board must form an intent not to renew the superintendent's contract and then give him timely notice of that intent by a written document which sets forth the specific reasons for the board's action." *Davis v. Board of Educ. of Farmer City–Mansfield Community Unit Sch. Dist. No. 17*, 63 Ill.App.3d 495, 20 Ill.Dec. 381, 380 N.E.2d 58, 61 (1978); *cf.*

*Daleanes v. Board of Educ. of Benjamin Elementary Sch. Dist. No. 25*, 120 Ill.App.3d 505, 75 Ill.Dec. 823, 457 N.E.2d 1382, 1387 (1983) (concluding that "a school board may not delegate the responsibilities to determine the existence of cause to discharge a superintendent and to determine that notice of the board's intent not to renew the superintendent's contract should be given").

quirement or whether the statute creates a cognizable property right in the employee for purposes of the federal due process clause.

The statute requires that his contract be renewed automatically unless the Board gives notice to him and states the reasons for nonrenewal in writing.[24] The requirement is more specific: Notice of intent not to renew the contract must be given by April 1 of the contract year. In this case, on February 17, 1994—before April 1 of the contract year—Dr. Crim received from the Board three documents: the notice of intent not to renew his contract, the written resolution of the Board concerning his contract, and the bill of particulars presenting the reasons for nonrenewal. We conclude that Dr. Crim was given proper written notice that his contract would not be renewed under the requirements of 105 ILCS 5/10–21.4. Moreover, "following the receipt by the superintendent of the notice, no further action is required by a school board in order to cause his dismissal." *Daleanes v. Board of Educ. of Benjamin Elementary Sch. Dist. 25*, 120 Ill.App.3d 505, 75 Ill.Dec. 823, 457 N.E.2d 1382, 1389 (1983). We conclude, therefore, that Dr. Crim has failed to show that he has established his due process claim to renewed employment as superintendent for a second year.

### 2.

The parties do not dispute that Dr. Crim has a protected property interest in his contract for a fixed one-year term of employment. The district court acknowledged his property right to his current job for the duration of his contract, but held that Dr. Crim was not deprived of that property right because he received his full salary and benefits under the contract and did not demonstrate that he was deprived of any other right with measurable economic value. Dr. Crim disagrees; he contends that he was not paid any accrued vacation pay and was deprived of such intangible benefits as the opportunity to attend professional meetings.

This court has held that the protection of the Fourteenth Amendment "should not be extended beyond harms having measurable economic value, harms that may include however a loss of pecuniary benefits not limited to wages or other compensation." *Swick v. City of Chicago*, 11 F.3d 85, 87 (7th Cir.1993). In that case, the plaintiff was suspended from his job with full pay. We explained that he would have had a due process claim if he had been suspended without full pay;[25] however, when there is no calculable economic deprivation, the Fourteenth Amendment should not protect such property interests as "the purely dignitary or otherwise nonpecuniary dimensions of employment" or "the sorts of intangible injuries normally small and invariably difficult to measure that must be accepted as the price of living in society." *Id.* Some of the deprivations of which Dr.

24. Dr. Crim also claims that the statute requires a hearing on the decision not to renew. His reading, on this point, is not correct. The School Code allows the superintendent to request a hearing on the dismissal within 10 days of receipt of the nonrenewal notice. But the hearing is not mandated unless the superintendent makes the timely request. In this case, of course, Dr. Crim requested and received a hearing. He raises two claims concerning the hearing: First, the Board should not have taken action against him until after the hearing to challenge the decision. This argument was made and rejected in *Daleanes*, 75 Ill.Dec. 823, 457 N.E.2d at 1390. Although § 10–21.4 grants the right to a hearing, "the only sort of hearing provided for in the statute" is one that follows the Board's notice of nonrenewal of the superintendent's contract. *Id.* Thus "the superintendent carries a burden of changing the minds of enough board members to alter the board's purpose." *Id.* Dr. Crim also asserts that he was prevented from examining the Board members as witnesses at the hearing. He was given the hearing he requested and was allowed to present evidence, witnesses and defenses on the grounds for dismissal, as the statute permits. We are not persuaded that Dr. Crim's inability to question the Board members results in a denial of a constitutional due process right to a fair hearing. *See id.* at 1390–91 (rejecting due process claim that the hearing was not fair because its outcome was predetermined).

25. It is noteworthy that, in *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), the Supreme Court suggested in dictum that, if an employee was suspended *with pay*, an employer could avoid the due process hearing problem. *See Gilbert v. Homar*, 520 U.S. 924 , 117 S.Ct. 1807, 1811, 138 L.Ed.2d 120 (1997) (quoting *Loudermill*, 470 U.S. at 544–45, 105 S.Ct. 1487).

Crim speaks-attendance at professional meetings—fall within the principle articulated in *Swick*. The claim for vacation pay remains unsubstantiated. We must therefore conclude that the superintendent's § 1983 claim of due process violations fails to prove a deprivation of a constitutionally protected property interest. The district court properly granted summary judgment to the defendants on Count III of the complaint.

### D. *Breach of Contract Claim*

■ Relying on the language of 105 ILCS 5/10–21.4, Dr. Crim asserts that he had a right to serve a second year as superintendent. We have demonstrated that his contention lacks merit as a constitutional due process claim; it fares no better as a state law breach of contract claim. Simply put, there was compliance with the statute. He further submits, in an equally cursory manner, that the contract was breached with respect to the completion of his first year.

The contract does provide for a 14–day notification period before the conduct of a hearing and it is undisputed that, with respect to the suspension, that time period was not honored. Even if we assume that the failure to honor this time period provision constituted a breach of the contract, Dr. Crim cannot survive summary judgment. As the district court pointed out, he received full compensation during the remainder of the contract year. He has not substantiated his entitlement to vacation pay. His claim that he suffered damage from his inability to retain the professional title is, on this record, speculative.[26]

### E. *Denial of Leave to Amend Complaint*

■ Finally, we do not believe the district court abused its discretion in refusing to allow the complaint to be amended a second time. Although a party may amend the pleading once as a matter of course under the conditions set forth in Federal Rule of

---

**26.** Dr. Crim filed an affidavit with the court stating that he had not received his accrued vacation pay. *See* R.113. The Board's evidence showed that Dr. Crim had continued to receive his full salary and benefits. Because Dr. Crim did not come forward with evidence that vacation pay was not included in his pay package, the district court held that he did not demonstrate that he was deprived of a property right with measurable economic value.

The record reflects the district court's consideration of this matter at a variety of procedural junctures. At the district court hearing on May 19, 1994, Dr. Crim was asked, "You have not been terminated in the sense that you're not receiving benefits or salary, correct?" His answer was, "My salary package is intact and being honored." Tr. at 66. In his Amended Complaint, filed with the district court on August 11, 1995, Dr. Crim did not allege loss of salary or benefits as part of his breach of contract or due process claims. R.47 at 7–8, 11–12.

The district court ruled on the defendants' motion to dismiss on May 14, 1996. It noted that Dr. Crim had not alleged whether the Board had continued to pay him after it suspended him. It then assumed, for purposes of the motion to dismiss, that the Board did not continue to pay the superintendent and that his suspension might be equivalent to a termination. Viewing all facts and inferences in favor of Dr. Crim, it found that Dr. Crim had alleged a deprivation of a property right without due process of law and declined to dismiss that claim. It also declined to dismiss Count V, the breach of contract claim. The court noted that the Board sought dismissal of the claim because it had given Dr. Crim all the

wages and benefits he was due under the contract. According to the court, however, Dr. Crim had pled sufficiently his breach of contract claim and might be able to prove a set of facts consistent with his amended complaint under which he could prevail at trial.

Nevertheless, Dr. Crim did not "prove a set of facts" to substantiate his claim. On November 11, 1996, he filed an affidavit in which he simply stated that he had not received his "accrued vacation pay which is a benefit due to me." R.113. He did not append any documentary proof. The district court, in considering Dr. Crim's due process-property right claim on summary judgment, commented:

> [T]he defendants' evidence shows that Crim continued to receive the full salary and benefits due him under his contract. Crim has not come forth with any evidence that he did not receive anything that he was due under his contract. Accordingly ... the Court finds that Crim has not been deprived of a property right....

R.118 at 22. The court then considered the vacation pay under the breach-of-contract claim:

> The only fact that Crim alleges which could be legally sufficient to constitute a breach of contract injury under Illinois law is the Board's alleged failure to pay accrued vacation pay. In his response, however, Crim has pointed to no admissible evidence that he has not received such pay. Therefore, the Court finds that no reasonable jury could find that Crim suffered any damages by the Board's breach of Crim's employment contract.

R.118 at 27.

Civil Procedure 15(a), *see Duda v. Board of Education of Franklin Park Public School District No. 84,* 133 F.3d 1054, 1056–57 (7th Cir.1998), thereafter he must receive leave of court to amend the complaint again. That leave is given "when justice so requires." Fed.R.Civ.P. 15(a).

Dr. Crim has not demonstrated that the district court abused its discretion in refusing to permit the filing of an amended complaint. His submission to us fails to address the district court's statement that it is unclear how the amendments would differ from the earlier version. *See Glatt v. Chicago Park Dist.,* 87 F.3d 190, 194 (7th Cir.1996) (finding no abuse of discretion when the court's ground for denying a motion to amend was that the plaintiff failed to substantiate his reasons for amendment). Dr. Crim has offered no reason for us to overturn the decision of the district court. We conclude that the district court's denial of leave to file a second amended complaint was not an abuse of discretion.

### Conclusion

For the reasons set forth above, we affirm the judgment of the district court granting summary judgment in favor of the defendants.

AFFIRMED.