**Ara SHEKERJIAN, Plaintiff,**

v.

**PYRAMID MOULDINGS, INC., Erwin Walz, Thomas Bartel and Richard Hopp, Defendants.**

No. 97 C 3374.

United States District Court, N.D. Illinois, Eastern Division.

Sept. 3, 1998.

---

Charmaine Elizabeth Dwyer, Chicago, IL, for Ara Shekerjian, plaintiff.

Michael T. Trucco, Scott Simeon Fintzen, Stamos & Trucco, Chicago, IL, Victoria L. Helms, Frank B. Shuster, Constangy, Brooks & Smith, LLC, Atlanta, GA, for Pyramid Mouldings Inc, Erwin Walz, Thomas Bartel, Richard Hopp, defendants.

## OPINION AND ORDER

NORGLE, District Judge.

Plaintiff Ara Shekerjian ("Shekerjian") filed the instant suit against Defendant Pyramid Mouldings, Inc. ("Pyramid"), alleging age discrimination in violation of the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 623, 631. Additionally, Shekerjian claims that Pyramid employees Erwin Walz, Thomas Bartel and Richard Hopp tortiously interfered with his business relations. Each defendant now moves for summary judgment. For the following reasons, Pyramid's motion is granted. Because the court declines to exercise supplemental jurisdiction over Shekerjian's state law claim, the remaining Defendants' motion for summary judgment is denied as moot.

## I. BACKGROUND [1]

Pyramid is a custom molding manufacturer. In May 1990, Pyramid hired Shekerjian as a "Tool & Die" worker. Shekerjian was sixty-one years old at the time.

From May 1991 through March 1995, Shekerjian had several disciplinary and work-related problems at Pyramid. For instance:

- Shekerjian repeatedly complained to Pyramid that it had broken its promise to promote him shortly after his hire.
- Pyramid issued Shekerjian two disciplinary warnings.
- Pyramid cited areas in which Shekerjian needed to improve in three performance evaluations.
- Pyramid's employee relations manager, Thomas Bartel ("Bartel"), told Shekerjian during a heated discussion that he had a poor attitude.
- In July 1994, Teamsters Local 714, of which Shekerjian was a member and negotiator, recommended to its members that they accept Pyramid's final offer for a new employment contract. Shekerjian, however, disagreed and spoke out against accepting the new contract.

Pyramid's problems with Shekerjian continued. In February 1995, Shekerjian met with Bartel, Pyramid's plant manager, Richard Hopp ("Hopp"), Shekerjian's supervisor, Rocky Sandal and Shekerjian's Union Steward Ralph Van Etten. During the meeting, Shekerjian was told to stop being disruptive for, *inter alia*, writing a twelve page letter to Pyramid's president complaining about management. In his letter, Shekerjian stated: 1) that his former supervisor, Nick Patitucci ("Patitucci"), was a phony and a fraud; 2) that "[r]aises, promotions and upgrades ... in the tool room were given to favorites, stool pigeons, informers and were not based on skill, ability or education [but] based only on whims, fantasies and personal preferences of

individual foreman, supervisors and managers;" and 3) that Bartel, Hopp, Walz and Patitucci were a "god awful combination." (Shekerjian's Resp., Ex. 2, Attach. D–7.) Shekerjian responded by demanding a promotion.

Less than three weeks after the meeting, Hopp discovered three cartoon drawings posted on a tool room door. One cartoon depicted a form of a swastika with the arms pointing counterclockwise and the expressions, "Welcome To Stalag 17" and "CoL. KLINK." The second cartoon depicted a World War II character by the name of Kilroy peeking over a wall with the expression, "Gosh? Is This A Job Shop?" The third cartoon featured a form of a swastika, again with the arms pointing counterclockwise, and the expressions, "WELCOME TO STALAG 17" and "CoL. KLINK COMMANDING OFFICER." Hopp, believing Shekerjian authored the cartoons, confronted him. Though Shekerjian denied knowledge of the cartoons, he was suspended.

During Shekerjian's suspension, a board certified "Forensic Document Examiner" reviewed the cartoons and several of Shekerjian's handwriting samples. The expert opined that Shekerjian authored the cartoons. At this point, Pyramid offered to allow Shekerjian to return to work if he signed a letter promising to cease disruptive conduct and comply with Pyramid's work rules. Shekerjian rejected Pyramid's offer because he felt that acceptance would have forced him to admit breaking rules which he did not break. Pyramid then terminated Shekerjian for violating its "No Harassment Policy" and Work Rule 19, which prohibits "threats, intimidation of management and the use of foul and abusive language." (Shekerian's Resp., Ex. 2, Attach. D–6.)

After his termination, Shekerjian filed a grievance through Teamsters Local 714. While his grievance was pending, Pyramid

---

1. The following facts are taken from the court's reconciliation of the parties' Local Rule 12(M) and 12(N) statements. As provided by the rule, the court will not accept statements of fact unsupported by the evidence, and statements not denied using evidence are deemed admitted. The court admonishes Shekerjian's counsel for failing to comply with Local Rule 12(N). Local Rule 12(N) requires a *concise* response to the movant's Local Rule 12(M) statement. Shekerjian's counsel submits a voluminous 33 page statement of additional facts which improperly includes speculation and argument.

implemented several layoffs due, in part, to declining sales. Pyramid included one "Tool & Die" position in the layoffs: Shekerjian's.

In May 1996, Pyramid offered to settle Shekerjian's grievance. The union's attorney informed Shekerjian of Pyramid's offer and told him that if he rejected the offer, the union would not pursue his grievance in arbitration. Shekerjian rejected the offer and the union abandoned his grievance.

Shekerjian filed suit on May 6, 1997, alleging age discrimination and tortious interference with his business relations. Pyramid now moves for summary judgment, arguing that Shekerjian cannot demonstrate that it discriminated against him because of his age.

## II. DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

When considering all the evidence presented in a motion for summary judgment, a court cannot make credibility determinations nor can it choose between competing possible inferences. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Accordingly, "if the evidence presented by the parties is subject to conflicting interpretations, or if reasonable minds could differ as to its significance," summary judgment must not be granted. *O'Connor v. Chicago Transit Auth.,* 985 F.2d 1362, 1366 (7th Cir.1993). The court must "view the record and all reasonable inferences drawn from the record in the light most favorable to the non-moving party." *Sample v. Aldi Inc.,* 61 F.3d 544, 546 (7th Cir.1995). The summary judgment "standard is applied with added rigor in employment discrimination cases, where intent and

credibility are crucial issues." *Sarsha v. Sears, Roebuck & Co.,* 3 F.3d 1035, 1038 (7th Cir.1993). These rules, however, do nothing to alter the burden of proof. "If the non-moving party bears the burden of proof on an issue, that party may not rest on the pleadings and must instead show that there is a genuine issue of material fact." *Sample,* 61 F.3d at 547.

At issue is whether Pyramid's reasons for firing Shekerjian were mere pretext for its alleged true motivation: age discrimination.

■ The ADEA makes it unlawful for an employer to discriminate against an employee 40 years of age or older because of the employee's age. 29 U.S.C. §§ 623(a), 631(a). The question is whether the plaintiff has established a logical reason to believe that the decision rests on age. *See Doe By Doe v. City of Belleville,* 119 F.3d 563, 585–86 (7th Cir.1997) (Title VII). A plaintiff "need not demonstrate that age was the sole reason for discharge," rather he must show that age was a "determining factor." *Wolf v. Buss (Am.) Inc.,* 77 F.3d 914, 919 (7th Cir.1996).

In order to satisfy his burden, Shekerjian may either present direct evidence of age discrimination, the "smoking gun," or follow the burden-shifting method set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 801–803, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). With no smoking gun, Shekerjian relies on the burden-shifting method.

■ Under the traditional burden-shifting method, Shekerjian must establish a prima facie case of age discrimination by demonstrating that: (1) he is at least 40 years of age and thus a member of a protected class; (2) he performed his work to Pyramid's legitimate expectations; (3) he experienced an adverse employment decision; and (4) similarly situated younger employees were treated more favorably. *See Oates v. Discovery Zone,* 116 F.3d 1161, 1171 (7th Cir.1997); *see also Wallace v. SMC Pneumatics,* 103 F.3d 1394, 1398 (7th Cir.1997). Once Shekerjian establishes a prima facie case, Pyramid must come forward with a legitimate, non-discriminatory reason for its treatment of him. *See Gleason v. Mesirow Fin., Inc.,* 118 F.3d 1134,

1141–42 (7th Cir.1997). If Pyramid meets its burden, the burden shifts back to Shekerjian to demonstrate that Pyramid's proffered reasons were pretext for discrimination. *See id.*

A plaintiff can establish pretext directly by showing a discriminatory reason more likely than not motivated the employer, or indirectly by evidence that the employer's explanation is unworthy of credence. *See Sarsha,* 3 F.3d at 1039; *see also Russell v. Acme–Evans Co.,* 51 F.3d 64, 68 (7th Cir. 1995) (stating that a pretextual reason means a lie, specifically a phony reason for some action). Even where an employer's reasons for terminating an employee were ill-considered or foolish, if the employer honestly espoused those reasons then pretext has not been proven. *See Crim v. Board of Education of Cairo School District No. 1,* 147 F.3d 535, 541 (7th Cir.1998). Put simply, the court does not review the propriety of an employer's decision to terminate, but considers only whether the employee proved that the reasons for the employer's decision were pretextual. *See id.* As the Seventh Circuit has often noted, courts do not act as super-personnel panels, second-guessing business decisions, even when those decisions are wrong. *See Bahl v. Royal Indem. Co.,* 115 F.3d 1283, 1291–93 (7th Cir.1997).

The parties dispute whether Shekerjian satisfies the first requirement of the burden shifting method: establishing a prima facie case of age discrimination. However, for purposes of this opinion, the court will assume Shekerjian does so and proceed to the next stage of the *McDonnell Douglas* test. *See Fairchild v. Forma Scientific, Inc.,* 147 F.3d 567, 571–72 n. 1 (7th Cir.1998) (assuming the requirements of the prima facie case and resolving the ADEA case on the basis of pretext); *see also EEOC v. Our Lady of Resurrection Med. Ctr.,* 77 F.3d 145, 149–50 (7th Cir.1996) ("[T]his court may advance to an ultimate issue in a summary judgment analysis and consider the discrimination question notwithstanding a dispute over a fact necessary for a prima facie case.").

Assuming Shekerjian presents a prima facie case, the burden shifts to Pyramid to produce, not prove, a legitimate, non-discriminatory reason for terminating Shekerjian. *See Gleason,* 118 F.3d at 1141–42. Pyramid meets this burden by stating that Shekerjian was terminated for his continuing foul and abusive attitude towards management. Most notably, Pyramid believed Shekerjian authored offensive cartoons containing swastikas and portraying the Pyramid workplace as a World War II prisoner of war camp.

Because Pyramid has met its burden of producing a legitimate, non-discriminatory motive for terminating Shekerjian, the burden shifts back to Shekerjian to prove that the proffered explanation was pretextual for its true motive of age discrimination. *See id.* Shekerjian attempts to meet this burden by recalling numerous events in which Pyramid supposedly wronged Shekerjian. He apparently believes that these alleged wrongs reveal a pattern of age discrimination which prove that Pyramid's reason for his termination was pretextual. Shekerjian's recitation of events, however, fails to link any of Pyramid's actions to age discrimination.

For instance, Shekerjian asserts that:

- Pyramid hired him as a "Tool & Die A" worker with a promise to quickly promote him to a "Tool & Die AA" classification. Although Shekerjian repeatedly requested a promotion, he never received one.

- Pyramid underrated his performance during evaluations and "there is evidence that these disciplinary actions were unwarranted and were themselves a product of age-based animus." (Shekerian's Resp., p. 11.)

- Pyramid's managers did not truly believe that he authored the three cartoons that led to his suspension and termination.

- Pyramid's retention of the handwriting analyst was an effort to conceal a discriminatory purpose.

In none of these instances, however, does Shekerjian produce even a scintilla of evidence to show that these actions were motivated by age-based animus.

Shekerjian also alleges that he was disciplined more harshly than younger employees who engaged in similar conduct. This claim, if true, supports Shekerjian's prima facie case. However, it does nothing to counter Pyramid's proffered reasons for terminating him (i.e., his attitude, his behavior and posting of disruptive cartoons). The mere fact that Shekerjian is forty years of age or older is not evidence.

In sum, Pyramid has produced legitimate, non-discriminatory reasons for terminating Shekerjian. However, Shekerjian produces no evidence beyond his own opinions that Pyramid's reasons him were pretextual. *Cf. McMillian v. Svetanoff,* 878 F.2d 186, 190 (7th Cir.1989) (plaintiff's subjective beliefs of racial bias are insufficient to create a genuine issue of material fact under Title VII). Thus, the court will not second-guess Pyramid's termination of Shekerjian.[2]

■ Finally, because Shekerjian's federal claim is no longer viable, the court declines supplemental jurisdiction over Shekerjian's state law claim of tortious interference with his business relations. *See* 28 U.S.C. § 1367(c); *see also City of Chicago v. Intern. College of Surgeons,* 522 U.S. 156, 118 S.Ct. 523, 533–34, 139 L.Ed.2d 525 (1997) (stating that pendent jurisdiction is a matter of discretion); *see also Vukadinovich v. Bd. of Sch. Trustees of Michigan,* 978 F.2d 403, 415 (7th Cir.1992) ("It is well established that if federal claims are dismissed before trial, the federal district courts should generally dismiss the state law claims as well.").

### III.  CONCLUSION

Shekerjian has offered no evidence that Pyramid's proffered reason for terminating him was pretextual. Thus, the court grants Pyramid's motion for summary judgment and declines supplemental jurisdiction as to the state law claim.

IT IS SO ORDERED.

---

**2.** The court also notes that Pyramid hired Shekerjian at the age of 61 and that during the period of Shekerjian's employment, Pyramid employed ten individuals who were over the age of 65. Of that group, six workers retired and three remained employed at the time of briefing.